Humphreys et al. *v.* Stuart Realty Corporation et al., Appellants.

Argued April 21, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

reargument refused June 15, 1950.

*Peter P. Zion,* with him *Leonard Green,* for appellants.

*George T. Steeley,* for appellees.

*G. Coe Farrier,* Senior Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for City of Philadelphia, intervening appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

The question here is in regard to the extent of the permissible enlargement of a non-conforming use under a zoning ordinance.

Under authority of the Act of May 6, 1929, P. L. 1551, the City of Philadelphia enacted an ordinance of August 10, 1933 which provided that no building should be erected or altered with respect to height and area for any use in any district unless and until a zoning permit had been obtained from the Bureau of Engineering, Surveys and Zoning; the word "building" was defined as including "structure". There was a provision for the continuance of non-conforming uses, and if a building containing a non-conforming use was destroyed by fire it could be reconstructed and used for the same non-conforming use provided the building when rebuilt did not exceed in height and area the building so destroyed. It was also provided that a non-conforming use in a building might be extended provided that no addition or structural alteration for such non-conforming use should exceed 25% of the area of the building at the time of the enactment of the ordinance.

Defendant, Globe Solvents Co., Inc.,* is in the business of buying and selling various petroleum products, chiefly cleaning fluids or solvents and lubricating oil, and in the course thereof stores the material in tanks of varying sizes; when sold in bulk deliveries are made by tank trucks; when sold in smaller quantities the materials are distributed in drums and cans. The business predecessor of this company was National Speedway Refining Co., Inc., which conducted its operations on an irregularly bounded tract of land that may roughly be described as extending approximately 150 feet on the northerly side of Fishers Avenue beginning 30 feet east of the northbound track of the North Pennsylvania Railroad and extending of a depth of approximately 280 feet. National Speedway Refining Co., Inc. had installed on these premises two metal tanks of a capacity of 20,000 gallons each, 4 of a capacity of 10,000 gallons each, 4 of a capacity of 5,000 gallons each, and a service tank for gasoline of a capacity of 1080 gallons. It had also erected three or four buildings. In 1932 it went into bankruptcy and its assets were purchased at public sale by persons who then organized the defendant company. The latter began operation in 1933 of the same kind of business as that to which the plant had previously been devoted, and it continued such operation until February 6, 1948 when a fire occurred on the premises. Meanwhile, between 1933 and 1948, it had made extensions to the buildings upon the premises and had erected two new buildings without obtaining either zoning or building permits therefor; it had also installed on the premises 23 additional tanks, 19 ranging in capacity from 500 to 5,000

---

* Defendant Stuart Realty Corporation is the holder of the real estate and defendant Mercer Oil and Chemical Co., Inc., is a sales agency or distributor; members of the same family are the holders of all the capital stock of each company. It is the Globe Solvents Co., Inc., which is the operator of the business here under attack, and it will hereinafter be referred to as if it were the sole defendant.

gallons each, 1 of a capacity of 10,000 gallons, 1 of 12,-000 gallons, and 2 of 14,600 gallons each, thereby increasing the total storage capacity from 100,000 gallons to approximately 224,000 gallons; of the entire 33 tanks 8 were above ground and the remaining ones were either wholly or partially buried. The fire destroyed most of the buildings, one of the tanks, and nearly all of the drums and small containers.

The district in which defendant operates its plant is zoned "Industrial" and under that classification its business would be prohibited, for the storage of petroleum products is permitted only in least restricted districts and the blending of such materials is also forbidden in industrial districts. Therefore the operation of its business can legally be continued only as a nonconforming use which existed at the time of the passage of the zoning ordinance.

In June, 1948 some of the residents of the neighborhood surrounding the plant brought a bill in equity alleging that the zoning ordinance had been violated and that defendant's conduct of its business constituted a nuisance; the court was asked to enjoin defendant from occupying or using its premises in a manner contrary to the provisions of the ordinance, from erecting or installing any structure thereon contrary to the ordinance, and from storing on the premises petroleum products, gasoline, solvents, and certain other chemicals. After an extensive hearing the court below found that the operation of the business did not involve a nuisance except insofar as the tanks containing solvents were exposed above ground and thereby constituted a fire hazard in a residential neighborhood. The court entered a decree granting an injunction against the erection on the premises of any building for the bulk storage of solvents or other materials dealt in by defendant, other than of the kind and dimensions of the buildings existing thereon on August 10, 1933, unless proper permits were

first obtained therefor from the proper authorities. The decree also enjoined defendant from using in its operations tanks of a total storage capacity in excess of 100,-000 gallons, excepting, however, the service tank for gasoline and the various mixing or blending tanks required in the normal operation of its business. The decree further enjoined the reconstruction of the tank destroyed in the fire, the use of any tanks not completely covered with at least two feet of earth on all sides, and the use of any real estate for the bulk storage of solvents or other materials dealt in by defendant other than the tract it occupied on August 10, 1933. There were other provisions in the decree which are not contested and do not enter into the questions raised on the present appeal.

It appears that during the course of defendant's business it had leased some ground adjacent to that which it occupied in 1933 and had conducted operations on that additional area. The court below properly enjoined the non-conforming use of such adjoining property. While a non-conforming use may be extended in scope as the business increases in magnitude it may not be so extended over ground not occupied at the time of the passage of the zoning ordinance. The court below was also right in enjoining the reconstruction of any of the buildings other than of the size and use as they existed on the premises when the ordinance was enacted. The ordinance expressly provides, as previously stated, that, while a building containing a non-conforming use, destroyed by fire, may be reconstructed and used for the same non-conforming use, it may not exceed in height and area the building so destroyed; if it is to be added to or structurally altered for such use the area may be increased by 25% but for such addition or structural alteration a zoning permit must first be obtained from the Bureau of Engineering, Surveys and Zoning.

The only part of the decree which is seriously attacked by defendant is the injunction against using in its operations tanks of a total storage capacity in excess of 100,000 gallons. In considering the question thus presented two applicable principles must be borne in mind. The one is that a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted: *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136, 138; *Haller Baking Co.'s Appeal,* 295 Pa. 257, 261, 262, 145 A. 77, 79; *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60, 62. The other principle is that such permissible enlargement of the use does not warrant the erection of new buildings or structures or any additions to buildings beyond the 25 per cent allowance hereinbefore referred to. Therefore the question as to the legality of the installation of the 23 tanks in defendant's plant after August 10, 1933 depends entirely upon whether they are to be regarded as "structures" within the meaning of that term in the zoning ordinance. The court below limited operation of the business to the capacity of the original ten tanks on the theory that such tanks *were* structures; in our opinion the learned court was not justified in so holding. If, as in *Standard Oil Company of New Jersey v. Atlantic City,* 18 N. J. Misc. 582, 15 A. 2d 271, it appeared that the tanks were set in concrete bases, firmly affixed or anchored to the ground and with auxiliary piping likewise rigidly fixed upon or under the ground, it might well be that they should be viewed as partaking of the status of realty. But no such evidence appears in the present record. Apparently these tanks are either laid in shallow pits surrounded by a dirt embankment or are entirely covered by 2 or 3 feet

of earth; they are not attached to any foundation or supports which would bring them within the ordinary concept of a structure. Had they merely lain on the surface of the ground it could scarcely have been claimed that they were additions to the realty any more than the drums and cans which were stacked up in various parts of the premises; their being laid in a trench or buried under the ground instead of lying thereon would not serve to transform them into structures. While a term used in one statute may not call for the same construction as the same term in another, it is at least of interest in this connection to note that storage tanks—unless perhaps attached to concrete foundations or otherwise bolted into the ground—are almost invariably held in cases involving tax statutes to constitute nothing more than part of the apparatus and equipment of the business; if installed merely for the benefit of the industry conducted on the premises and of no particular benefit to the land if the industry were removed they are regarded as personal property in the nature of trade appliances or machinery: *Gulf Oil Corporation v. Philadelphia*, 357 Pa. 101, 53 A. 2d 250; *Foley v. The Pittsburgh-Des Moines Co.*, 363 Pa. 1, 33, 34, 68 A. 2d 517. The storage tanks here in question are merely containers of the products sold by defendant and are no more structures subject to the zoning law than would be cans, casks, vats, tuns or other types of containers used in other business enterprises.

The portions of the decree of the court below enjoining defendant from using in its operations tanks of a total storage capacity in excess of 100,000 gallons, and from reconstructing the tank destroyed in the fire, are disapproved. The decree as thus amended is affirmed; costs to be paid by Globe Solvents Co., Inc.