Philadelphia Art Alliance *v.* Philadelphia Zoning Board of Adjustment (et al., Appellant).

Argued November 24, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused May 10, 1954.

*W. Clark Hanna*, with him *Joseph Rossman*, for appellants.

*Laurence H. Eldredge*, with him *Norris, Lex, Hart & Eldredge*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 1, 1954:

The Petitioner, Philadelphia Art Alliance, applied for a use registration permit to extend an existing parking lot. The Zoning Board of Adjustment refused the application, but the lower court, upon certiorari, and after hearing, reversed the Board's action and ordered the issuance of the requested permit. The Center City Residents' Association, Inc. and a group of twelve individual property owners, who had intervened in the action, filed exceptions which were stricken off by the Court. Whereupon, the Intervenors appealed from (a) the court's order reversing the Board's action; and (b) the order striking off the exceptions.

On July 1, 1926, the Philadelphia Art Alliance, a non-profit corporation, purchased by a single deed the site of its main building 251 South 18th Street (at the southeast corner of Rittenhouse Street—now Rittenhouse Square) and two adjoining lots, 1726 and 1728 Rittenhouse Street (now Rittenhouse Square).

Several months later, on September 18, 1926, the Art Alliance purchased by a single deed premises 1716, 1718, 1720, 1722 and 1724 Rittenhouse Square. Shortly thereafter (and before the adoption of the Philadelphia Zoning Ordinance here in question) the buildings then standing on the six lots 1718 to 1728 inclusive were demolished and the area of those six buildings was converted into a single public parking lot. This parking lot was leased to two successive outside operators for commercial public use, which use has continued uninterruptedly down to the present time. The building at 1716 Rittenhouse Square, however, was allowed to remain, and was used at various times as a residence, dance studio, art gallery and experimental theater both before and after the inception of the Zoning Ordinance.

On August 10, 1933, the Philadelphia Zoning Ordinance and accompanying zoning maps were adopted. By their provisions all the lots in the 1700 block of Rittenhouse Square on both sides of the street were classified as "D-1" Residential, and a public parking lot was not and is not included as a permitted use in said area. Thus, the parking lot then in existence became a "non-conforming use", permitted under Paragraph (1) of Section 4 of the Philadelphia Zoning Ordinance, which provided: "Any land, the existing use of which at the time of passage of this ordinance, does not conform with the regulations of the district in which it is located, shall have such use considered a non-conforming use, which may continue on such land but shall be subject to the regulations covering non-conforming uses."

On July 7, 1952, the Art Alliance applied for a use registration permit to extend the parking lot (existing as a nonconforming use on lots *1718 through 1728* Rittenhouse Square) to include lot *1716*.

In presenting its application to the Zoning Board, the Art Alliance urged that it was entitled to a permit for public parking on premises 1716 Rittenhouse Square because (1) The Act of 1929, P. L. 1551, sec. 8, 53 PS sec. 3829, empowered the Zoning Board, inter alia, "To authorize, upon appeal in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (2) It was entitled to the permit as a matter of constitutional right by reason of the nonconforming use already existing on the adjoining lots which had been acquired by the same deed.

The Board found against the application on both grounds, but on certiorari, the court below reversed the Board's holding on the second ground, and held that the permit should have been granted as a proper extension of a nonconforming use in existence at the time of the enactment of the Zoning Ordinance. We affirm this action.

Paragraphs (6) and (7) of Section 4 of the Philadelphia Zoning Ordinance of 1933, as amended, specify the permissible extensions of nonconforming *buildings* and uses *therein,* and provide that "no addition or structural alteration for such non-conforming use shall exceed twenty-five (25) per cent. of the area of *said building* at the time of the approval of this ordinance . . ." Thus, the Ordinance specifically permits extensions of nonconforming *buildings* and *uses therein,* with the limitation that such extension shall not exceed 25% of the area of the building at the time of the adoption of the ordinance. The ordinance is silent, however, as to extensions of nonconforming uses not carried on in "buildings". But, as the lower court pointed out, this silence is not to be construed as a denial of an extension in such a case. There is no reason to believe that the framers of the Ordinance intentionally sought to arbitrarily discriminate against users of vacant land by prohibiting them from extending a nonconforming use, and authorizing a 25% extension in area for nonconforming uses in "buildings". Vacant land may be used for important activities and it is illogical to assume that the owners of such land as well as investors therein should not have the right to extend the use to be made of land, while the owners of buildings may expand their operations. The only reasonable and constitutional construction of the ordinance in question is that it does permit an extension of a nonconforming use of land, even without buildings, *at least,* to the ex-

tent of 25% of the area or tract already devoted to that use. In the instant case, the extension sought amounts to only 16.6% of the original parking lot area.

This court has repeatedly held as it did in *Humphreys v. Stuart Realty Corp.*, 364 Pa. 616: ". . . a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted: Gilfillan's Permit, 291 Pa. 358, 362, 140 A. 136, 138; Haller Baking Co.'s Appeal, 295 Pa. 257, 261, 262, 145 A. 77, 79; Cheswick Borough v. Bechman, 352 Pa. 79, 82, 42 A. 2d 60, 62."

The area upon which the parking lot is sought to be extended is contiguous to the present parking lot. Both areas were acquired at the same time and prior to enactment of the ordinance. Art Alliance took title to premises 1716 to 1724 Rittenhouse Square by a single deed dated September 18, 1926, and thus 1716 must be viewed as being part of the tract upon which the commercial parking lot has been operated since 1931. Therefore, the fact that the building at 1716 Rittenhouse Square was torn down while the present proceedings were pending does not create the problem of changing from one nonconforming use to another. The proposal is not to initiate an entirely new nonconforming use at 1716 for which a variance rather than an extension would be required; only the question of extension is involved, and for the reasons above stated the extension was properly allowed. As Mr. Justice Bell stated in the recent decision of *Rolling Green Golf Club Case*, 374 Pa. 450 (quoting from *Lord Appeal*, 368 Pa. 121): " 'Restrictions imposed by zon-

150

ing ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed: Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d 765; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182 . . .' "

Decree affirmed; costs on appellants.