# Borough of West Reading v. Zoning Hearing Board

*Franklin E. Poore, III,* for appellant.
*Paul R. Ober,* for appellee.
*Mervin A. Heller, Jr.,* for intervenors.

SAYLOR, *J.,* December 2, 1980—This matter comes before us on an appeal by the Borough of West Reading, Berks County, Pennsylvania,[1] from the decision of the Zoning Hearing Board of the Borough of West Reading granting a variance to Robert P. Kaley, President of Kaley's Corner, Inc., a tavern existing as a nonconforming use, for expansion of its present building by approximately 41 percent in area. Kaley's Corner, Inc. and Robert P. Kaley intervene in this appeal in support of the decision of the zoning hearing board (board).

Our scope of review is clear. We did not take additional evidence and, therefore, our function "is only to review the action of the Board on the record made before that body in order to determine whether the Board committed a manifest abuse of discretion or error of law." Pyzdrowski v. Pittsburgh Board of Adjustment, 437 Pa. 481, 485, 263 A. 2d 426, 429 (1970).

---

1. The Borough of West Reading was not officially represented at the zoning hearing board hearing in this matter even though the applicant provided proper notice. A municipality is always a party to the zoning board proceeding, however, and it may appeal the board's decisions notwithstanding the fact that the municipality does not appear at the zoning hearing to object to or contest a variance application: Lower Paxton Twp. v. Fieseler Neon Signs, 37 Pa. Commonwealth Ct. 506, 391 A. 2d 720 (1978); Pennsylvania Municipalities Planning Code of July 31, 1968, P.L. 805, as amended, secs. 908(3), 1007, 53 P.S. §§10908(3), 11007.

Subsequent to a hearing held March 6, 1980, the board issued written findings of fact and conclusions of law in addition to its formal decision. The board found, inter alia, the following facts.

Kaley's Corner, Inc., by its president, Robert P. Kaley, applied to the board for a variance for premises located in the Borough of West Reading. The premises, operated as a tavern, are located in a high density residential (R-HD) district and constitute a nonconforming use. The present structure contains approximately 2,060 square feet in floor area, measuring 60 feet in depth by approximately 45 feet in width, and sits on an irregularly shaped lot measuring approximately 174.81 feet by 99.57 feet. A steep rocky grade exists along the east line of the property, ending in a large retaining wall. There is another steep grade between the end of the tavern's parking area running down to the property line.

The applicant proposes to add 860 square feet in floor area to the existing structure, the addition's dimensions to measure approximately 15 feet by 60 feet. The proposed expansion would constitute an increase of approximately 41 percent of the existing structure's floor area. The purpose of the expansion is to create better kitchen facilities and a storage area.[2]

Applicants anticipate that a steam table, deep fryers, freezer, walk-in cooler, pinball machine and jukebox would be installed in the proposed addition. No additional restaurant tables or bar stools would be installed, no additional employes would be hired and no additional parking would be pro-

---

2. At oral argument in this matter, counsel for the intervenors conceded that at least a portion of the proposed storage area would more aptly be described as a game-room.

vided or needed. The existing structure encroaches on the required eight foot front yard setback as would the proposed addition. The building was expanded by a previous owner by approximately 25 percent.

The board further found that approximately one-third of applicant's premises is unusable for any purpose, including residential use, because of slope and rock conditions and that the proposed variance is an "absolute necessity for the continued operation of applicant's business." The board made the following pertinent conclusions of law:

. . .

7. The proposed addition would protrude into the required front yard setback, being a continuation of the existing building which, as a pre-existing nonconforming use protrudes into said front yard setback.

8. The lot in question is irregularly shaped, is in some sections very steep and thus not utilizable for building or parking purposes, and is extremely rocky.

9. Applicant would have no increase in employes or customers should the proposed variance be granted.

. . .

13. Should the requested variance be not granted [sic], applicant's business would be adversely affected.

14. The proposed use would not affect the character of the surrounding neighborhood.

15. The applicant has proven that there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of the lot size or shape, where exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hard-

ship is due to such conditions and not to circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

16. The applicant has proven that because of such physical conditions or circumstances there is no possibility that the property can be developed in strict conformity with the provisions of this zoning ordinance and that the authorization of a requested variance is therefore necessary to enable the reasonable use of the property.

The board granted the application for a variance from Appendix A, Article 200[3] of West Reading's zoning ordinance, which regulates yard setback requirements and from Section 1102.13 of the zoning ordinance.[4] The latter section provides that where a nonconforming structure, use of structure or use of land exists at the time of adoption of the ordinance, its use may be continued subject to the limitation that upon enlargement or alteration of such a structure, *"In no case* shall the nonconforming use expand more than 25 percent of its

---

3. The board's findings and decision erroneously refer to Article 100 rather than Article 200.

4. The board placed the following conditions on the grant of the variance: (a) if any additional employes are added, for every two additional employes, there will be added one parking space; (b) if additional seats are added for customers, there will be one additional parking space provided for every three seats; (c) the guardrail located on the southern portion of the subject premises shall be moved in a southerly direction towards Grape Street a minimum distance of five feet; (d) eight parking spaces located to the eastern side of the subject premises along an unnamed alley shall be paved and lined in compliance with the requirements of the ordinances of the Borough of West Reading.

total floor area which exists at the time of the adoption of this Ordinance."[5]

Appellant, in its zoning appeal notice, contends the board committed errors of law and abuses of discretion in the following respects: (1) the board exceeded its authority in permitting expansion of a nonconforming use beyond the mandatory 25 percent limitation provided in the ordinance; (2) the board granted a variance from the front yard setback requirements in the absence of a showing of unnecessary hardship and where hardship as to setback requirements, if any, was self-inflicted; (3) applicant failed to carry its burden in proving it was entitled to the variance; (4) the board failed to make certain findings required under the Pennsylvania Municipalities Planning Code and made other findings and conclusions of law unsupported by the evidence or irrelevant to the matter at issue; and (5) the board failed to impose certain conditions on the expansion as required under section 1102.12 of the Ordinance.[6] Appellant asks that the board's grant of the variance be reversed or in the alternative, requests the case be remanded in order that the borough may introduce material evidence on issues raised in its notice of appeal.

## DISCUSSION

Appellant asserts that the limitation on expansion of a nonconforming use to 25 percent of the

---

5. Zoning Ordinance No. 613, Borough of West Reading, Pa., § 1102.13 (adopted Feb. 15, 1977). (Emphasis supplied.)

6. Section 1102.12 of the West Reading Zoning Ordinance requires the installation of a fence, landscape screen or combination thereof along lot lines abutting uses or structures which are conforming where nonconforming structures or uses of structures have been enlarged or altered.

existing structure's floor area pursuant to section 1102.13 of the zoning ordinance is mandatory and therefore the board's grant of a variance from the requirements of that section to allow expansion beyond 25 percent usurps the legislative power of the borough council in enacting the ordinance. The case law in this area shows appellant's contention to be without merit.

The right of natural expansion of a nonconforming use is essentially a constitutional right protected by the due process clause on the principle that expansion is necessary to protect the original property interest in the tract: Schiller-Pfeiffer, Inc. v. Upper Southampton Township Board of Adjustment, 1 Pa. Commonwealth Ct. 588, 276 A. 2d 334 (1971). This right is not unlimited, however, and the right of a municipality to impose reasonable restrictions on the expansion of a nonconformong use has never been questioned: Silver v. Zoning Board of Adjustment, 435 Pa. 99, 102-3, 255 A. 2d 506, 507 (1969). The courts have ruled that one example of a reasonable restriction is to limit the natural expansion of a nonconforming use to a reasonable percentage of its size at the time the use became nonconforming: Schiller-Pfeiffer, Inc. v. Upper Southampton Township Board of Adjustment, supra; Humphreys v. Stuart Realty Corp., 364 Pa. 616, 73 A. 2d 407 (1950); Philadelphia Art Alliance v. Phila. Zoning Board of Adjustment, 377 Pa. 144, 104 A. 2d 492 (1954). Courts have not interpreted percentage limitations on expansion to represent absolute limitations. The Commonwealth Court interpreted a provision of a zoning ordinance similar to the one in the case at bar in the following manner:

"[T]he effect of the [percentage limitation on expansion] is to broaden appellees' rights, not to nar-

row them. By it they may add to this nonconforming use to the extent it permits without proof of hardship or absence of injury to public interest. Rather than diminishing rights, it confers them; for its effect is to require that *only the excess* of its allowance must be supported upon variance principles . . . The owner may as of right enlarge his building to the extent permitted by the zoning regulations; if he is to do more he *must show entitlement to a variance.*" City of Philadephia v. Angelone, 3 Pa. Commonwealth Ct. 119, 130, 280 A. 2d 672, 677-78 (1971). (Emphasis supplied.)

Thus, we do not interpret section 1102.13 of the Zoning Ordinance to place an absolute limit of 25 percent on expansion. Because any excess enlargement over the 25 percent limitation must be supported on variance grounds rather than under the expansion doctrine, City of Philadelphia v. Angelone, supra, we must proceed to determine whether an abuse of discretion or error of law has been committed by the board in granting the variance.

The following principles apply when an applicant seeks the grant of a variance. An applicant for a variance must establish and the board must find where relevant in a given case: (1) that there are unique physical circumstances peculiar to the particular property and that the unnecessary hardship is due to such conditions; (2) that the property cannot be developed in strict conformity with the provisions of the zoning ordinance; (3) that such unnecessary hardship has not been created by the applicant; (4) that the variance will not be detrimental to the public welfare; and (5) that the variance will represent the minimum variance that will afford relief: Pennsylvania Municipalities

Planning Code,[7] sec. 912, 53 P.S. § 10912; Kraiser v. Horsham Twp. Zoning Hearing Board, 45 Pa. Commonwealth Ct. 277, 279, 406 A. 2d 577, 578 (1979). See, e.g., Ottaviano v. Phila. Zoning Board of Adjustment, 31 Pa. Commonwealth Ct. 366, 376 A. 2d 286 (1977); Thayer v. Lower Milford Township, 16 Pa. Commonwealth Ct. 124, 343 A. 2d 92 (1974). Further, variances are to be granted only sparingly and only under exceptional circumstances. An economic hardship personal to applicant is not sufficient: Kraiser, supra. "To justify the variance, the supporting reasons must be 'substantial, serious and compelling.'" Borough of Emmaus v. Schuler, 48 Pa. Commonwealth Ct. 100, 409 A. 2d 444 (1979).

In the instant case, the applicant sought a variance for a 41 percent expansion in floor area for a structure containing a nonconforming use. In justifying the grant of the variance for expansion, the board apparently placed great weight on the rocky nature and irregular slope of applicant's property. Certainly, applicant has proven there are unique physical circumstances peculiar to its property, but *no* evidence was presented before the board that the unnecessary hardship compelling expansion is *due* to such condition. Rather, the unnecessary hardship claimed is that a 41 percent expansion in floor area is necessary for the continued operation of applicant's business. The Pennsylvania Municipalities Planning Code states that a board may grant a variance provided it makes the five findings enunciated above, but only *"where relevant* in a given case." 53 P.S. § 10912. (Emphasis supplied.) We do not discern the relevance of

---

7. Act of July 31, 1968, P.L. 805, as amended.

the peculiarity of the physical circumstances of the property to findings of an unnecessary hardship under this particular fact situation when the question to be decided is whether or not the expansion of a nonconforming use structure shall be limited to 25 percent of existing floor area.

Instead, the applicant was required to prove and the board was required to find under this fact situation that the property cannot be developed in strict conformity with the provisions of the zoning ordinance[8] and that the variance will represent the minimum variance that will afford relief and will afford the least modification possible of the regulation in issue.[9] With respect to both of these criteria there was a *total* absence of proof. Applicant may be able to expand up to 25 percent and still be in strict conformity with the ordinance at issue since a 25 percent expansion of floor area is a matter of right under the ordinance. The physical circumstances or conditions of applicant's property do not interfere with applicant's ability to develop his property in strict conformity with the ordinance. Even if the structure could not be developed in strict conformity with the ordinance, applicants offered no testimony that a 41 percent expansion is the minimum modification that will afford relief. Not only was no testimony given before the board with respect to the necessity for an expansion of the site requested, but only a few sparse, conclusory remarks appear in the record as to the necessity of the proposed enlargement at all:

Q. Now, what would be the purpose or reason that you have for wanting to expand this particular area of your building?

8. 53 P.S. § 10912(2).
9. 53 P.S. § 10912(5).

A. Better kitchen facilities and a much-needed storage area.

Q. Okay. And has your business justified or necessitated this increase in space?

A. Yes. Yes. (N.T. 10-11).

. . .

Q. Do you find that your business has, since you have had it, increased to the point that this is an absolute necessity for your continued operation?

A. Yes. I would say so.[10] (N.T. 13).

The board did not enter a finding with regard to whether the variance represented the minimum variance that will afford relief. The board did find, in Conclusion of Law No. 16, that "there is no possibility that the property can be developed in strict conformity with the Zoning Ordinance." The board stated, however, that it based this conclusion on grounds of physical conditions or circumstances of applicant's property. As we stated above, the physical peculiarities of applicant's property do not interfere with or in any manner logically relate to development of the property in strict conformity with West Reading Zoning Ordinance § 1102.13.

Because the board failed to make relevant findings required by section 912 of the Municipalities Planning Code and because the board misapplied

---

10. Although not determinative of our decision in this matter, we note the apparent contradiction between the above statements that applicant's business has increased to the point where expansion is necessary with other assertions made by applicant to the board that no increased seating, parking or addition of employes is foreseen. We also note the contradiction between the board's Conclusion of Law No. 9, that applicant would have no increase in customers should the variance be granted and Conclusion of Law No. 13, that should the variance be refused, applicant's business would be adversely affected.

the law with respect to other findings, we conclude the board committed error of law in granting applicant a variance from the provisions of section 1102.13 of the Zoning Ordinance of the Borough of West Reading.[11]

The only issue that remains to be determined is whether a remand is warranted. The question of whether or not a remand is appropriate rests within the discretion of the trial court: Soble Construction Co. v. East Stroudsburg Zoning Hearing Board, 16 Pa. Commonwealth Ct. 599, 604, 329 A. 2d 912, 916 (1974). Because there is *no* evidence in the record, let alone substantial evidence, on which the board might have based the requisite findings it failed to make when this matter was first before it, we believe it would be futile to remand to the board for the purposes of making such findings. A remand is necessary in order to clarify one issue, however, and will be ordered for that limited reason only. The applicant may as of right expand his nonconforming structure up to 25 percent of the structure's floor area existing at the time the ordinance was adopted:[12] City of Philadelphia v. Angelone, 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672, 677-78 (1971). Although the board found that the noncon-

---

11. Because we rule that the variance allowing the 41 percent expansion was improperly granted, we need not reach the merits of appellant's assertions that the variance from the setback requirement was improperly granted or that the board failed to impose requisite conditions on the expansion.

12. Appellant argues that under Pennsylvania's Pending Ordinance Rule applicable in zoning cases, the date the municipality first took the ordinance under consideration is the determinative date rather than the date of adoption of the ordinance. Appellant cites no case in support of this assertion nor are we aware of any. We conclude the pending ordinance rule is not applicable to the situation at bar.

forming use structure had been expanded by approximately 25 percent by a previous owner, the board, because of ambiguous and conflicting testimony, was apparently unable to conclude whether the previous expansion occurred prior to or subsequent to the effective date, February 15, 1977, of the zoning ordinance in question. Such a finding must be made so that the applicant can determine whether he may exercise his right to expand the floor area of the nonconforming use structure up to the 25 percent limit allowed under the zoning ordinance.

Accordingly, we enter the following

### ORDER

And now, December 2, 1980, the appeal of plaintiff, Borough of West Reading, is sustained, and the West Reading Zoning Hearing Board's order granting a variance is reversed. The matter is remanded to the West Reading Zoning Hearing Board for the limited purpose set forth in the foregoing opinion.

