619 A.2d 399

**Robert SMITH and Karen Smith, his wife**

v.

**ZONING HEARING BOARD OF THE BOROUGH OF BELLEVUE and Suburban General Hospital.**

**Appeal of SUBURBAN GENERAL HOSPITAL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided Dec. 30, 1992.

Reargument Denied Feb. 12, 1993.

---

428

J. Lawrence McBride, for appellant.

Robert W. Goehring, for appellees, Robert Smith et ux. Michael Georgalas, for appellee Borough of Bellevue.

Before McGINLEY and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Suburban General Hospital (SGH) appeals two orders of the Court of Common Pleas of Allegheny County reversing a decision of the Zoning Hearing Board (ZHB) of the Borough of Bellevue which granted SGH permission to construct parking lots. We affirm.

When it was constructed, SGH was a permitted use in a district defined as Residential–Second by the zoning ordinance of the Borough of Bellevue (the Borough). The Borough amended its zoning ordinance in 1984 and deleted "institutions" (which includes hospitals) from the permitted uses in the district. SGH thereafter was a valid non-conforming use. At the time of the 1984 amendment, SGH owned four lots contiguous to the hospital. After those amendments, SGH purchased two more lots.[1] These six contiguous lots, which are approximately the size of a football field, are the subject of this litigation.

Section 1121.04(a)(11) of the zoning ordinance provides for "accessory uses on the same lot customarily incident to the [permitted] uses". Parking is not specifically listed as a separate permitted use. In 1988, SGH asked the Borough's Town Council to rezone the tract to allow parking as a permitted use but that request was denied. SGH then sought a building permit to construct the parking lot. The Borough's solicitor notified SGH that the permission was denied because the lots were separate from the lot upon which SGH was built. SGH appealed that denial to the ZHB.

1. One of the lots is vacant while the other lot still has a house erected on it.

Hearings were held before the ZHB on four dates over a three month period. The Borough was represented by its solicitor and appeared in opposition to the request; Karen and Robert Smith, adjoining landowners, also appeared in opposition. At these hearings, SGH presented evidence concerning its severe shortage of parking space. It also presented its plans for landscaping and lighting of the parking lot to make it as unobtrusive as possible. Following the hearings, the ZHB made findings of fact and concluded that SGH should be permitted to construct the parking lots. The ZHB held that such use was permitted as a reasonable expansion of a non-conforming use; the Board also stated that "[t]he permitted expansion is necessary in order to accommodate the requirements of natural growth of the operation of the hospital and is the hardship necessary for granting a variance in this case". (Decision of the ZHB, Conclusion of Law 6, 1/29/91.) Both the Borough and the Smiths appealed the ZHB's decision to common pleas court.

Without taking additional evidence, the common pleas court reversed the ZHB's order, concluding that the ZHB had committed two errors of law. The court first concluded that the doctrine of reasonable expansion of a non-conforming use did not apply to property acquired after the use became non-conforming. The court also held that there was no evidence to show that SGH was entitled to a variance. Based upon this reasoning, the court reversed the ZHB's order insofar as it granted a variance. The court vacated the order granting permission to construct the parking lot as an expansion of a non-conforming use and remanded the matter to the ZHB to make findings of fact on the question of whether a parking lot *consisting solely of the properties held by SGH at the time it became a non-conforming use* would be detrimental to public health, safety and welfare.

Because of the remand ordered by the common pleas court, SGH petitioned that court to amend the interlocutory portion of the orders to permit an interlocutory appeal by permission because of the existence of a controlling question of law as to which there was substantial ground for a difference of opin-

ion.[2]  The court treated this petition as one seeking reconsideration and modification.  It, thereafter, vacated the original order and entered a new order which simply reversed the entire order of the ZHB, deleting any reference to a remand, stating instead that "[t]he ruling of this court is without prejudice to the right of [SGH] to file an amended application with the [ZHB]...."  (Order of the Court of Common Pleas of Allegheny County, 2/18/92.)  SGH then appealed those final orders to this Court.

■  On a zoning appeal where the common pleas court did not take any additional evidence, our scope of review is limited to determining if the ZHB committed an error of law or manifestly abused its discretion.  *Pa. Northwestern Distributors, Inc. v. Zoning Hearing Board,* 526 Pa. 186, 584 A.2d 1372 (1991); *Curtis Investment Co. v. Zoning Hearing Board of the Borough of West Mifflin,* 140 Pa.Commonwealth Ct. 302, 592 A.2d 813 (1991).  SGH argues that the ZHB did not commit any legal errors [3] and thus should have been affirmed by the common pleas court.  We do not agree.

■  The Supreme Court could not have been more clear when it stated, "While a non-conforming use may be extended in scope as the business increases in magnitude *it may not be so extended over ground not occupied at the time of the passage of the zoning ordinance."*  *Humphreys v. Stuart Realty Corp.,* 364 Pa. 616, 620, 73 A.2d 407, 409 (1950) (emphasis added).  This principle, first expressed over forty years ago, is still the law.  We have held that where such expansion is sought a variance is necessary.  *Schaffer v. Zoning Hearing Board of Upper Darby Township,* 32 Pa.Commonwealth Ct. 261, 378 A.2d 1054 (1977).  As we said, "[The landowner] needed a variance to use the lots acquired after the enactment of the zoning ordinance for parking because her nonconforming use ... did not entitle her to extend that use over land not occupied when the ordinance became effective."  *Id.* at 265, 378 A.2d at 1056.  It is thus

2.  *See* Pa.R.A.P. 1312.

3.  There is not now, nor has there been, any allegation that the ZHB committed an abuse of discretion.

required that SGH prove its entitlement to a variance to use the after acquired lots for parking.

Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *added by* Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2 (Supp.1992–93), provides in pertinent part:

The board may grant a variance, provided that *all* of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions ... peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, *there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable a reasonable use of the property.*

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(Emphasis added.)

■ Specifically, with regard to the two after acquired lots, the variance should not have been granted for at least two reasons. First, there is not one shred of evidence in this voluminous record to show that the two lots could not be used as zoned, i.e., for residential purposes. This failure of proof is alone sufficient to deny the request for a variance. We have

stated that "[u]nnecessary hardship occurs where it is shown that compliance with a zoning ordinance would render a property 'practically valueless' ". *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh,* 61 Pa.Commonwealth Ct. 101, 104, 433 A.2d 158, 160 (1981). SGH has offered no evidence that the zoning ordinance has so effected the value of these two lots.

■ We also believe that *Snyder v. Zelienople Zoning Hearing Board,* 20 Pa.Commonwealth Ct. 139, 341 A.2d 546 (1975), prohibits the grant of the variance to SGH. In that case, an automobile dealership, which was operating as a non-conforming use, was being pressured by its manufacturer to expand its facilities. In an attempt to expand the owner of the dealership purchased a lot across the street. That district did not permit an automobile dealership. The owner sought a variance which was denied by the local zoning authorities. We pointed out in affirming that the hardship was being suffered by the dealership and not by the after acquired property. There was no proof there that any unnecessary hardship attached to the after acquired lots.[4] In the present case, as in *Snyder,* SGH offered evidence capable of supporting a finding that the lack of adequate parking was an unnecessary hardship *to SGH and its original property.* To obtain a variance for after acquired property, the landowner must prove an unnecessary hardship as to the after acquired land for which the variance is needed. SGH offered no such evidence.

SGH argues that *Everson v. Zoning Board of Adjustment,* 395 Pa. 168, 149 A.2d 63 (1959) and *Civera v. Zoning Board of Adjustment,* 39 Pa.Commonwealth Ct. 499, 395 A.2d 700 (1979), compel the conclusion that the grant of the variance was not an error of law. Those cases, which deal with the question of parking for a non-conforming use, are distinguishable and do not support SGH's contention. In each of those cases, the landowner seeking permission to use space for

4. In *Snyder,* the dealership property, the non-conforming use, was owned by a corporation with Snyder as the sole shareholder. Snyder individually purchased the after acquired property. We do not believe this distinction is of any moment to our present analysis.

parking proposed *to use land which already was owned by the non-conforming use at the time the use became non-conforming.*

In *Everson,* the landowner was seeking to expand its building and to add on-site parking. A dimensional variance was necessary to expand the building. A close reading of the case reveals that no variance was necessary for the on-site parking; that request was granted on the basis of an extension of a nonconforming use. The court also held that the zoning board had the power to impose conditions, such as landscaping and paving, when approving the parking site.

*Civera* is somewhat different. In that case, we affirmed the trial court's order on the basis of its opinion. *Civera v. Zoning Board of Adjustment,* 9 Pa.D & C 3d 39 (1977). As described by the trial court, the proposed parking facility was not on land occupied by the art gallery, the non-conforming use, but was "on land which it long owned." *Id.* at 44. After referring to the rule in *Humphreys* mentioned above, the court went on to explain:

> The expansion of right, however, is limited to land *already occupied* by the nonconforming use. '[T]he expansion of a nonconforming use does not in and of itself entitle the owner to erect structures on a portion of his land not previously occupied by the business enterprise.' *Mack Zoning Appeal,* 384 Pa. 586, 589, 122 A.2d 48 (1956); *Philadelphia v. Angelone,* 3 Pa.Commonwealth Ct. 119, 280 A.2d 672 (1971). The burden is on the land user to prove that the land was previously so used: Philadelphia v. Angelone, supra. If the land user fails to meet this burden, or seeks to put *additional property to* the nonconforming use a variance must be obtained.

*Civera,* 9 D & C 3d at 44 (emphasis in original). The court went on to explain why the lack of adequate parking constituted an unnecessary hardship for the nonconforming use's entire property permitting the grant of the variance based entirely on the lack of adequate parking and public safety concerns. In no way, however, can *Civera* be read as allowing the grant of a variance to after acquired property without meeting the

traditional test for a variance. We thus will affirm those orders.

## ORDER

NOW, December 30, 1992, the orders of the Court of Common Pleas of Allegheny County, dated February 18, 1992, at Nos. SA 471–91 and SA 468–91 are affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent. While I acknowledge the general rule and application as applied by the majority, I believe it is inapplicable to the facts in the instant case.

Although caselaw supports the majority's decision not to allow the extension of the nonconforming use over the after-acquired property, there is an overriding public policy which I believe should be controlling in this case.

Several of the lots in one block were purchased for the extension of the nonconforming use prior to the amendment to the zoning ordinance. I believe that this fact should allow the entire block to be utilized as parking. *See Philadelphia Art Alliance v. Zoning Board of Adjustment,* 377 Pa. 144, 104 A.2d 492 (1954).

In this particular case, the applicant is the Suburban General Hospital which public policy, within the reasonable bounds of discretion, should allow to continue functioning for the betterment of society and the community.

I would hold as controlling the significant shift of the hospital's character of service, from inpatient to outpatient services. Such a shift necessarily involves increases in the demand for parking space. Because there is increased utilization of outpatient services by patients on a daily basis, parking is essential, and the extension of such parking is necessary to the continued viability of the nonconforming use.

Accordingly, I would reverse.