# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Perry                                    :
                                              :
                v.                            :    No. 584 C.D. 2023
                                              :    ARGUED:  October 8, 2024
South Union Township Zoning                   :
Hearing Board                                 :
                                              :
                v.                            :
                                              :
JFEB, LLC and South Union Township            :
                                              :
Appeal of: Bernadette Tummons                 :

Bernadette Tummons,                           :
                        Appellant             :
                                              :
                v.                            :    No. 585 C.D. 2023
                                              :
South Union Township Zoning Hearing           :
Board                                         :
                                              :
                v.                            :
                                              :
JFEB, LLC and South Union Township            :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  January 29, 2025**


        Appellant, Bernadette Tummons, appeals from an order of the Court of
Common Pleas of Fayette County, dismissing her appeal from the decision of the

South Union Township Zoning Hearing Board (Board). The Board's decision approved JFEB, LLC's application to use adjacent property for additional off-street parking for its nonconforming restaurant use, pursuant to the special parking provision found at Section 417.3(b) of the South Union Township Zoning Ordinance.[1] For the following reasons, we affirm.

## I. Background

JFEB owns and operates Mom Maruca's Restaurant and Bar on property located in the Township's R-1 Residential zoning district. Board Finding of Fact (F.F.) No. 1(b), (d) and (f). It is undisputed that Mom Maruca's is a lawful nonconforming use because the property has been used as a restaurant since prior to the adoption of the Zoning Ordinance in 1974.[2] *See* Tummons' Br. at 11, 17; *see also* Reproduced Record (R.R.) at 18a. Berkley Medical Resources LLC (Berkley) owns the subject property adjacent to Mom Maruca's, which is also zoned R-1 Residential, and which is currently vacant. F.F. No. 1(c) and (e); R.R. at 1a.

In September 2022, JFEB submitted an application to the Board pursuant to Section 417.3(b) of the Zoning Ordinance seeking to use the subject

---

[1] S. Union Twp., Fayette Cnty., Pa., Zoning Ordinance (1974) (Zoning Ordinance). Section 417 of the Zoning Ordinance is titled "Off-Street Parking and Loading Requirements."

[2] Section 413 of the Zoning Ordinance pertaining to nonconforming uses provides, in part:

> Any lawful uses of buildings or land existing at the effective date of this ordinance may be continued, even though such use does not conform to the provisions thereof. The nonconforming uses of a building may be extended throughout those existing parts of the building which were arranged or designed for such use. No nonconforming building or structure shall be moved, extended, enlarged or altered, except when authorized by the Board in accordance with the provisions of this ordinance.

Zoning Ordinance § 413; Reproduced Record (R.R.) at 58a-59a.

2

property as additional parking for Mom Maruca's. That section, titled "Special Parking Provision," states:

> (a) Two or more nonresidential uses may jointly provide and use parking spaces when their hours of operation do not normally overlap, provided that a written agreement shall be filed with the application for a zoning certificate.
>
> (b) Parking spaces may be located on a lot other than that containing the principal use with the approval of the [] Board.

Zoning Ordinance § 417.3 (Section 417.3 or special parking provision); R.R. at 63a.

The Board's application form instructs applicants to indicate the type of application they are filing by placing a check next to either "Use by Special Exception" or "Variance." R.R. at 1a. JFEB did not check either line on its application. Where asked to cite all applicable sections of the Zoning Ordinance, JFEB only listed Section 417.3(b). In the space marked "Justification for Request," JFEB noted: "The proposed use is consistent with the use of the adjoining parcel, [] and will help alleviate parking problems in the area." R.R. at 2a.

At a public hearing before the Board on November 16, 2022, JFEB presented the testimony of Eric Sampson, its co-owner and operator. F.F. No. 1(a). Sampson testified that JFEB executed an agreement of sale with Berkley to purchase the subject property contingent on the Board's approval of the application. F.F. No. 1(c). Mom Maruca's business has grown and the 17 parking spaces located on JFEB's property are no longer sufficient; therefore, JFEB proposed to add 28 parking spaces on the subject property. F.F. No. 1(h) and (l); R.R. at 10a-11a. Mom Maruca's patrons were already parking on the subject property without Berkley's permission and the application, and ultimate sale of the subject property, would

3

alleviate this issue. While JFEB did not have specific plans for lighting or paving the new parking lot, Sampson indicated that the parking spaces would be marked, the area would be properly lit, and JFEB would follow all storm water and drainage requirements as the subject property is bisected by a stream. F.F. No. 1(i)-(k). Sampson confirmed that there is no sidewalk in the area and patrons would have to walk along a six- to eight-foot shoulder to get to Mom Maruca's. R.R. at 11a-12a.

Paul Perry, a Township resident who lives directly across the street from the subject property, appeared at the hearing and was represented by counsel. R.R. at 12a-13a. Perry testified that he was concerned about headlights from the proposed parking lot shining into his living room as well as increased noise because Mom Maruca's hosts outdoor live music once or twice a month. R.R. at 21a-22a. Further, once the subject property is paved, storm water runoff could be problematic because the area is prone to flooding. R.R. at 22a. Tummons acted as co-counsel for Perry, but she is also a Township resident and provided testimony in opposition to the application. R.R. at 18a, 22a-23a.

Following an executive session, the Board voted unanimously to approve JFEB's application, R.R. at 25a, and subsequently issued a decision to this effect, R.R. at 4a-7a. The Board found Sampson's testimony to be credible, notably finding that "Mom Maruca[']s Restaurant business has grown and currently does not have adequate parking for their customers on their existing lot." F.F. No. 1(l). The Board specifically concluded that "the proposed use of the subject property shall comply with the South Union Township Ordinance." Board Conclusion of Law (COL) No. 10. The Board did not impose any additional conditions or requirements, "with the exception that [JFEB] will comply with all federal, state, and local rules, regulations and requirements, including but not limited to" those imposed by the

4

Department of Transportation, the Department of Environmental Protection, and the Township Ordinance. COL Nos. 9 and 10.

Perry and Tummons filed separate appeals, which were consolidated, and the trial court granted the petitions to intervene filed by JFEB and the Township. Without taking any additional evidence, in May 2023, the trial court issued a single opinion and order dismissing the appeals and affirming the decision of the Board. The trial court determined that JFEB was not seeking to expand its nonconforming use and, therefore, found inapposite this Court's decision in *Smith v. Zoning Hearing Board of the Borough of Bellevue*, 619 A.2d 399 (Pa. Cmwlth. 1993). Rather, as our Supreme Court held in *Appeal of Rolling Green Golf Club*, 97 A.2d 523 (Pa. 1953), here the Board interpreted Section 417.3 of the Zoning Ordinance as akin to a special exception. Noting the deference that must be afforded to the Board when interpreting its own Zoning Ordinance, the trial court found that the Board's decision was supported by substantial evidence and discerned no abuse of discretion or error of law. Tummons filed two separate notices of appeal to this Court, which were subsequently consolidated,[3] and Perry submitted a notice of non-participation.

## II. Issues

The issues Tummons raises on appeal can be paraphrased as follows: (1) whether the Board committed an error of law or abused its discretion by interpreting Section 417.3 of the Zoning Ordinance as allowing it to convert property

---

[3] By Order issued September 8, 2023, this Court consolidated the matters and directed Tummons to file her brief and reproduced record on or before October 18, 2023. After Tummons failed to do so or to request an extension of time, both JFEB and the Township filed motions to dismiss the appeals. On December 7, 2023, this Court issued an Order denying the motions and directing Tummons to file her brief and reproduced record on or before December 21, 2023, or the appeals would be dismissed as of course. Tummons filed a timely application for extension of time, which was granted, and ultimately submitted her brief and reproduced record on January 2, 2024.

that is zoned R-1 Residential into a commercial property, without requiring JFEB to meet the requirements for a variance; (2) whether JFEB's application is, in effect, an improper expansion of a nonconforming use;[4] and (3) whether the Board's decision granting the application is supported by substantial evidence.

### III. Discussion

While Tummons recognizes that Section 417.3 of the Zoning Ordinance does not mention the term variance, she nevertheless argues that JFEB's request is, *in substance*, seeking a variance. According to Tummons, the Board cannot change or alter the designation of the subject property from residential to "commercial"[5] solely through application of the special parking provision. Instead, any additional parcel of property JFEB intends to use for parking for its nonconforming restaurant use must either (1) already be zoned for commercial use, or (2) JFEB must apply for a variance. If the subject property had already been zoned commercial, then JFEB could have sought the Board's approval to use it as off-site parking by submitting, as it did here, an application pursuant to Section 417.3. However, because the subject property is zoned R-1 Residential, JFEB should have applied for a variance and the Board misapplied the Zoning Ordinance

---

[4] This issue of an improper expansion of a nonconforming use is not specifically set forth in the statement of the questions involved portion of Tummons' brief, nor is there a separate section dedicated to this issue in the argument portion thereof. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *see also* Pa.R.A.P. 2119 (pertaining to the argument portion of an appellate brief). However, the issue is discussed at pages 26-28 of Tummons' brief, and JFEB does not argue that the issue has been waived. The issue was also squarely addressed by the trial court.

[5] As JFEB notes, the Zoning Ordinance does not contain a "commercial" zoning district but instead has two business districts – B-1 General Business and B-2 Highway Business. *See* Zoning Ordinance § 301.3. A restaurant is contained within the Zoning Ordinance's definition of "business classification," Zoning Ordinance § 201, and appears to be a permitted use within both business districts, Zoning Ordinance § 301.3.

by approving the application without meeting the requirements for a variance. JFEB failed to present any evidence to demonstrate unnecessary hardship and Sampson's general claim that the current parking is no longer sufficient to support Mom Maruca's business fails to meet the requisite legal standard.[6]

Because this matter is essentially one of interpretation we must keep certain principles in mind, the first being that "[l]ike statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014) (citing section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921). "In pursuing that end, we are mindful that [an ordinance]'s plain language generally provides the best indication of legislative intent and, thus," we must begin with an "examination of the text itself." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) [citing *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (*en banc*)]. We look beyond the plain language only where an ambiguity exists "and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Kohl*, 108 A.3d at 968 [quoting *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004)]. Importantly, "[a]n ambiguity exists when language is *subject to two or more reasonable interpretations*, not merely because two conflicting interpretations may be suggested." *Weiler v. Stroud Twp. Zoning Hearing Bd.*, 300 A.3d 1121, 1126 (Pa. Cmwlth. 2023) (emphasis added). *See also Tri-Cnty. Landfill*, 83 A.3d at 510.

---

[6] It is undisputed that JFEB's application did not request a variance, and neither the Board nor the trial court evaluated the application under the variance standard. *See* Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a) (pertaining to requirements for the grant of a variance). The Zoning Ordinance does not contain a specific provision regarding variances.

While the language of the special parking provision does not explicitly state that it is a special exception, Tummons' interpretation that it instead requires a variance is simply not reasonable. As Tummons concedes, the special parking provision does not mention the word "variance," nor does it reference the Pennsylvania Municipalities Planning Code section pertaining to variances.[7] Rather, the provision merely states that approval of the Board must be obtained for parking spaces to be located on a lot other than that containing the principal use. It is axiomatic that we may not insert words into an ordinance that the legislative body failed to supply. *See, e.g.*, *Malt Beverages Distribs.*, 918 A.2d at 176 (explaining that while we must "listen attentively to what [an ordinance] says," we "must also listen attentively to what it does not say") [quoting *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001)]. Section 417 also does not restrict the applicability of off-site parking to any particular zoning district(s) or specific use(s)—be they permitted or lawful nonconforming uses—of the principal property. This is noteworthy because, as JFEB points out, public uses such as schools, public parks, and administrative, cultural, and service buildings are permitted uses within all three of the Township's residential zoning districts. There are also many uses that are allowed by special exception in these residential zoning districts, including apartment buildings, neighborhood businesses, nursery schools, and noncommercial recreational facilities. The Zoning Ordinance requires off-street parking for all such uses. Under Tummons' reading of the special parking provision, none of these permitted uses would be able to utilize adjoining property in a residential zoning district to satisfy their off-street parking requirements absent a variance. In sum, the plain language of the special parking provision does not support Tummons' interpretation.

---

[7] *See* Section 910.2 of the MPC, 53 P.S. § 10910.2.

8

The Board, for its part, interpreted the language of the special parking provision in the context of the Zoning Ordinance as a whole and concluded that it is akin to that of a special exception. As we have repeatedly explained, "despite its name, '[a] special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled provided the specific standards enumerated in the ordinance . . . are met[.]'" *Quaker Valley Sch. Dist. v. Leet Twp. Zoning Hearing Bd.*, 309 A.3d 279, 288 (Pa. Cmwlth. 2024) [quoting *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006)]. The plain language of the special parking provision here coincides with the nature of a special exception. *See Rolling Green.* Moreover,

> a zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. . . . The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering.

*Tri-Cnty. Landfill*, 83 A.3d at 510 (quotation omitted); *see also Kohl*, 108 A.3d at 968.[8] This Court will not substitute its judgment for that of the Board absent an abuse of discretion, which is not discernable here. *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014). Because JFEB was not required to obtain a variance under the special parking provision, Tummons' argument that it failed to meet the standard for a variance is irrelevant.

---

[8] *See also* section 909.1(a)(6) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(6) (providing that "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]pplications for special exceptions under the zoning ordinance").

In the alternative, Tummons argues that through the application, JFEB improperly seeks to expand its nonconforming business use onto property zoned R-1 Residential and that *Smith* is controlling. This argument is without merit for several reasons. First, and fundamentally, JFEB is not seeking to extend or expand its nonconforming use of its property as a restaurant. The application does not involve the current structure in which Mom Maruca's is situated, or even JFEB's property itself, but rather a separate adjoining parcel. Second, Tummons fails to recognize that in *Smith* there was no provision in the applicable zoning ordinance which would allow the proposed use of the property without obtaining a variance, such as the special parking provision here. For these reasons, *Smith* and the cases cited therein are both factually and legally distinguishable.

Finally, Tummons maintains that the evidence and testimony before the Board did not establish a need for more parking and that the general testimony that JFEB's business had grown and there was "conflict" over parking with Berkley, the current owner of the subject property, is insufficient. Tummons claims that the Board failed to acknowledge and address the testimony of the objectors, herself included. In essence, Tummons is challenging the credibility determinations of the Board as she asserts that the conflict in the evidence should have been resolved in her favor. It is well established, however, that "[t]he Board, as fact finder, is the ultimate judge of credibility and resolves all conflicts of evidence." *In re Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001). *See also Burd v. Borough of Brentwood Zoning Hearing Bd.*, 298 A.3d 431, 440 (Pa. Cmwlth. 2023) ("The [B]oard is the sole judge of the credibility of witnesses and the weight afforded their testimony."). Based on the testimony of Sampson, which the Board found to be credible, the Board held that JFEB's application met the requirements of the Zoning Ordinance. *See* COL Nos. 6, 7, 10, and 11. We will not disturb these determinations

10

on appeal. Moreover, we must view the evidence in the light most favorable to JFEB as the party that prevailed before the Board, and "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the fact finder." *Burd*, 298 A.3d at 440 (quotation omitted).

## IV. Conclusion

In conclusion, there is substantial evidence to support the Board's findings, and we discern no error of law or abuse of discretion. Accordingly, the order of the trial court affirming the decision of the Board is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Perry                   :
                             :
            v.              :    No. 584 C.D. 2023
                             :
South Union Township Zoning       :
Hearing Board                :
                             :
            v.              :
                             :
JFEB, LLC and South Union Township   :
                             :
Appeal of: Bernadette Tummons     :

Bernadette Tummons,            :
                 Appellant     :
                             :
            v.              :    No. 585 C.D. 2023
                             :
South Union Township Zoning Hearing   :
Board                       :
                             :
            v.              :
                             :
JFEB, LLC and South Union Township   :

# **O R D E R**

AND NOW, this 29th day of January, 2025, the order of the Court of Common Pleas of Fayette County is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita