### 517 A.2d 1028

Richard D. Repko and Dianne Repko, his wife et al., Appellants *v.* The Zoning Hearing Board of The City of Greensburg, Appellee.

Argued October 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Thomas J. Godlewski,* for appellants.

*John K. Sweeney,* with him, *Raymond J. Hoehler,* for appellee.

*Vincent J. Quatrini, Jr.,* for amicus curiae, Women's Services of Westmoreland County, Inc.

OPINION BY JUDGE CRAIG, November 18, 1986:

Richard and Dianne Repko and other neighboring residents (objectors) appeal an order of the Court of Common Pleas of Westmoreland County which affirmed a decision of the Greensburg Zoning Hearing Board granting Women's Services of Westmoreland County (Women's Services) a special exception to permit reno-

vation and use of a dwelling, in an R-2 (general residential) District, as a shelter for victims of domestic violence, with five living units and administrative offices. The shelter would provide temporary housing, counseling and support services for abused women and their children.

We must determine (1) if the proposed shelter falls within the special exception for a "rooming house" as provided in the Greensburg zoning ordinance,[1] and (2) whether the zoning hearing board properly determined that the proposed use would not be detrimental to the neighborhood.

---

[1] *The special exception is as follows:*

ARTICLE XVII

ZONING HEARING BOARD

SECTION 1707-4. Special Exception: The Board shall hear and decide requests for the following special exceptions to the terms of the zoning ordinance in the districts indicated, and may authorize a permit therefor, subject to: the provisions prescribed hereunder; all other applicable provisions of this ordinance, unless otherwise excepted hereunder, and such other additional reasonable conditions and safeguards that the Board may prescribe, as it deems necessary to implement the purpose of the Planning Act and this zoning ordinance, provided, however, that no variances from any of the applicable provisions shall be allowed.

. . . .

c. In the 'R-2' District, on a zoning lot of not less than seventy-two hundred (7200) square feet, provided the prescribed yard, lot width, and height requirements of a one-family dwelling are met and that the Board determines that the use would not be disturbing to the neighborhood: for the erection, alteration, enlargement, and use of a building for:

. . . .

(3) A rooming house with an additional lot area of three hundred (300) square feet for each sleeping room in excess of four (4).

The objectors first contend that the proposed shelter is not a "rooming house" as used in the special exception provision of the ordinance, but rather a conditional use which must be considered by the city council. The Greensburg ordinance does not define "rooming house."

The courts give undefined terms of a zoning ordinance their plain, ordinary meaning, assuming that an undefined term has been employed in its broadest sense. *Appeal of Mt. Laurel Racing Association*, 73 Pa. Commonwealth Ct. 531, 458 A.2d 1043 (1983).

The phrase "rooming house" is commonly defined as "a house where lodgings are provided and let." Webster's New Collegiate Dictionary (1977). In the broadest sense of the phrase, a structure designed to house domestic violence victims temporarily is a rooming house.

The Greensburg Zoning Ordinance also contains conditional use provisions for educational, philanthropic and religious institutions[2] and for hospitals, sanitariums and nursing homes.[3] The objectors contend that the proposed shelter requires conditional use authorization, which the ordinance provides is granted or denied by city council, in accordance with section 603 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10603. Since the conditional use catagories are also undefined, we agree that the proposed shelter might fall within the broadest meaning of a philanthropic institution or nursing home. Our scope of review, however, is limited to the question of whether the board abused its discretion by labeling the proposed use as a "rooming house" rather than one of the conditional uses.[4] Given the broad sense in which

---

[2] City of Greensburg Zoning Ordinance, section 1605.1 (enacted April 14, 1971).

[3] *Id.*, section 1605.4.

[4] *Soltis v. Tasir*, 79 Pa. Commonwealth Ct. 551, 469 A.2d 1157 (1984).

these undefined terms must be analyzed, we cannot say that the board abused its discretion by labeling the proposed shelter as a "rooming house" rather than a "philanthropic institution" or a "nursing home."

The fact that Women's Services proposes to annex administrative offices to the shelter fuels the objectors' argument that the proposed shelter constitutes a conditional use. The record indicates, however, that the board considered the proposed administrative uses and conditioned the special exception grant appropriately. The first condition to the special exception grant states: "No more than 1500 square feet of structure will be used for the administrative offices of Women's Services." Furthermore, the board's Finding of Fact No. 14 states that the 1500 square foot limitation on administrative office space would sufficiently restrict the shelter's administrative functions to an accessory use.

The objectors cite *Lakeside Youth Service v. Zoning Hearing Board of Upper Moreland Township,* 51 Pa. Commonwealth Ct. 485, 414 A.2d 1115 (1980); *Wengert v. Zoning Hearing Board of Upper Marion Township,* 51 Pa. Commonwealth Ct. 79, 414 A.2d 148 (1980); and *Pennsylvania George Junior Republic v. Zoning Hearing Board of Coolspring Township,* 37 Pa. Commonwealth Ct. 151, 389 A.2d 261 (1978), as precedents for the proposition that a shelter is not a rooming house. None of those cases, however, control our analysis.

In *Lakeside Youth Service,* this court affirmed a trial judge's ruling that a house for six delinquent young females was not a single-family dwelling. Likewise, in *Wengert,* we determined that a foster home for six children did not constitute a single-family dwelling. In *Pennsylvania George Junior Republic,* this court determined that a group home for juvenile offenders was not entitled to a special zoning exception as a preparatory or boarding school.

Women's Services does not propose to operate a single-family dwelling or boarding school. Because we hold that the proposed use fits within the rooming house exception to the ordinance, we therefore affirm the trial court's determination that the board properly granted a special exception to Women's Services for the proposed shelter.[5]

The objectors also claim that the court of common pleas erred in ruling that the proposed use would not disturb the neighborhood in view of the objectors' "overwhelming" testimony that the proposed use would be disturbing. Section 1707-4(c) of the zoning ordinance establishes, as a condition to the granting of a special exception, that the proposed use not "be disturbing to the neighborhood."

The objectors' testimony concentrated on seven features of the proposed shelter which are potentially disturbing:

1. Use of a nearby (not adjoining) lot for employee parking.

2. Employee traffic to and from the facility.

3. Client traffic to offices in the facility.

4. A children's playground on the lot.

5. Professional traffic to the facility to provide treatment to the residents.

6. The transient nature of the occupants.

---

[5] The objectors also claim that the board erred in granting the special exception because section 1707-4 of the Greensburg zoning ordinance requires that no variances from ordinance requirements be granted with the special exception permit. Specifically, the objectors claim that section 1103-5 requires a lot width of 90 feet for the use Women's Services proposes; the property in question is 80 feet in width. As Women's Services notes, however, the 90-foot restriction applies only to row dwellings. The ordinance requires only a 60-foot minimum width for the lot which Women's Services proposes to use.

7. The possibility of disturbances caused by irate family members.

Several of the objections concern traffic and parking problems which allegedly would be created by the proposed use. However, the record contains testimony by Women's Services that the proposed twelve-space parking lot, to accompany the renovation, would adequately serve the parking needs of the shelter residents and staff.

The record does not reveal any specific testimony to support the objection to the proposed play area. The board responded to the objection, however, by conditioning the special exception permit on the construction of a six-and-one-half foot solid wood fence to enclose the play area.

Testimony offered by Women's Services witnesses rebutted the objectors' concern about disturbances of the peace, recited in objections Nos. 6 and 7. A Greensburg police officer and a former neighbor of the existing facility testifed that the existing shelter has operated peacefully with no negative impact on that neighborhood.

In conclusion, we are unable to find an unrebutted objection or any capriciously ignored evidence to support a conclusion that the board abused its discretion in concluding that the proposed shelter would not disturb the neighborhood. We must affirm the order of the court of common pleas affirming the board's grant of the special exception.

## ORDER

Now, November 18, 1986, the order of the Court of Common Pleas of Westmoreland County, Pennsylvania, No. 4820 of 1984, dated October 11, 1985, is affirmed.