517 A.2d 1385

Allegheny Valley School and Joseph Ligo *v*. The Zoning Hearing Board of Slippery Rock Borough et al. George Rector and Jane Rector, his wife, et al., Appellants.

Allegheny Valley School and Joseph Ligo *v*. The Zoning Hearing Board of Slippery Rock Borough et al. Borough of Slippery Rock, Appellant.

Argued October 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Alexander H. Lindsay, Jr.,* with him, *Marion Laffey Ferry, Lindsay & Lutz, P.C.,* for appellants, George Rector and Jane Rector, his wife, et al.

*S. Joseph Brydon,* Special Solicitor for appellant, Borough of Slippery Rock.

*Kenneth D. Perkins, Henninger & Robinson,* for appellee, Allegheny Valley School and Joseph Ligo.

*Howard Ulan,* Assistant Counsel, for amicus curiae, Department of Welfare.

OPINION BY JUDGE CRAIG, November 21, 1986:

The Borough of Slippery Rock[1] and numerous objectors appeal from an order of the Court of Common Pleas

---

[1] The school argues that the borough improperly intervened in this case. The issue is governed by section 1009 of the Pennsylvania

of Butler County, dated September 11, 1985, denying post-trial relief[2] and affirming the order of Common Pleas Judge FLOYD A. RAUSCHENBERGER, JR., dated June 28, 1985, which reversed the refusal of the Zoning Hearing Board of the Borough of Slippery Rock to grant Allegheny Valley School a special exception authorizing

---

Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11009, which expressly allows a municipality to intervene as of course in a zoning case before the common pleas court, within the first thirty days after the zoning appeal has been entered in that court and providing that *"[a]ll other interventions shall be governed by Rules of Civil Procedure."*

Before the trial court disposed of the post-trial motion for relief, the borough intervened pursuant to a petition for intervention under Pa. R.C.P. No. 2329. The court exercised its discretion and allowed the borough to intervene.

The school points to two decisions of this court—*DeMeno v. Zoning Hearing Board of Plymouth Township,* 82 Pa. Commonwealth Ct. 334, 474 A.2d 1180 (1984), and *Gilbert v. Montgomery Township Zoning Hearing Board,* 58 Pa. Commonwealth Ct. 296, 427 A.2d 776 (1981)—in support of its argument. However, both of those cases are distinguishable from the situation here.

In *Gilbert,* we held that a municipality was not automatically entitled to standing to appeal when it was never a party to the proceedings before the board or the trial court. In *DeMeno,* we invalidated a local rule which allowed a municipality to intervene as of course because that rule was inconsistent with the Rules of Civil Procedure.

The record here provides no basis to fault the trial judge's exercise of discretion in allowing the borough to intervene.

[2] Although the school did not raise the issue, unless there is a local rule of court to the contrary, a single-judge order in a zoning appeal is final and the filing of a post-trial motion does not extend the period allowed for filing an appeal to this court. *C. B. Co. v. Rostraver Township Zoning Hearing Board,* 49 Pa. Commonwealth Ct. 204, 410 A.2d 1298 (1980).

However, because the trial court accepted briefs and heard oral argument on the motion for post-trial relief, we must proceed on the basis that the Court of Common Pleas of Butler County does provide by local rule for post-trial relief in zoning appeal cases.

a group home for six mentally retarded adults in an R-1 residential district. We affirm.

The school filed an application with the board requesting a special exception under Article 4, Section 4.110 (3) of the Zoning Ordinance of the Borough of Slippery Rock. Subsection (C) of that section provides:

C. Special Exceptions

1. Nursing homes, retirement homes and convalescent homes for more than five (5) persons situated on a lot of not less than 20,000 square feet, screened in accordance with Section 5.600, and meeting all other state and local requirements.

2. Nursery school and daycare center for more than five (5) persons situated on a lot not less than 20,000 square feet, screened in accordance with Section 5.600, and meeting all other state and local requirements.

3. Hospitals, clinics and eleemosynary institutions landscaped in accordance with Section 5.260 and located on a public street.

The school applied for a special exception under subsection (C), asserting that the proposed group home was an eleemosynary institution.

Before the board and in the notice of appeal to court, the school's counsel also took the position that the proposed use was the functional equivalent of a single-family residence, and that the definition of family in the zoning ordinance could not legally bar it. Section 2.200 of the ordinance defines a family as:

An individual, or two or more persons related by blood, marriage, or adoption, or a group of not more than the number defined below, excluding servants, who are not related by blood, marriage or adoption, living together as a single housekeeping unit in a dwelling or rooming unit. The

number of persons defined as a family, if unrelated, is as follows: R-1    2.

Nevertheless, the chief issue is whether the board erred in determining that the group home was not an eleemosynary institution under section 4.110(C)(3), but constituted a rooming, boarding or lodging house, allowable only as a conditional use in another zoning district.

According to the board's findings, the school is a nonprofit organization whose purpose is to serve handicapped individuals. The proposed use was that of a group home for a maximum of six residents and a three-member house family. The residents would be working adults with varying degrees of mental handicaps. Additionally, the board found that the proposed use would not be detrimental to the values of the surrounding residential homes to a significant extent. The board also determined that the proposed use would not pose a danger to public health or safety, nor would it present a nuisance condition.

Whether the school's proposed use of the residential dwelling as a group home qualified as an eleemosynary institution is a question of law and subject to review on that basis. *Appeal of Ethken Corporation*, 89 Pa. Commonwealth Ct. 612, 493 A.2d 787 (1985).

A special exception is a conditionally permitted use, legislatively allowed if the standards are met. *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). A permitted use must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land. *Appeal of Ethken* at 616, 493 A.2d at 789. Ambiguities must be resolved in favor of the landowner. *Heck v. Zoning Hearing Board for Harveys Lake Borough*, 39 Pa. Commonwealth Ct. 570, 397 A.2d 15 (1979). Because the zoning ordinance does not

provide a definition for "eleemosynary," it must be given its usual and ordinary meaning. *Bakerstown Container Corporation v. Richland Township,* 508 Pa. 678, 500 A.2d 420 (1985).

The borough and the objectors place much emphasis on the testimony of the school's witness who stated that he would not call the institution eleemosynary, but would call it a "single-family housekeeping." However, the trial court looked to the law dictionary's[3] definition of eleemosynary:

> **Eleemosynary.** Relating or devoted to charity; given in charity; having the nature of alms.
> **Charitable.** Having the character or purpose of a charity. The word 'charitable', in a legal sense includes every gift for a general public use, to be applied consistent with existing laws, for benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. . . . This term is synonymous with 'beneficient', 'benevolent', and 'eleemosynary'.

and correctly determined that the witness' concept of a "single-family housekeeping" did not negate status as an eleemosynary institution because (1) the school is a nonprofit organization funded through both private and public funds with the primary funding received through Medicaid, and (2) the school does not receive compensation from its residents, who retain their earnings.

In *Children's Aid Society v. Zoning Board of Adjustment,* 44 Pa. Commonwealth Ct. 123, 402 A.2d 1162 (1979), and *Penrose v. Philadelphia Zoning Board of Adjustment,* 24 Pa. Commonwealth Ct. 525, 357 A.2d 713 (1976), this court treated group homes for foster children as charitable institutions. Traditionally, public

---

[3] Black's Law Dictionary 467, 212 (5th ed. 1979).

funds are used for the care of foster children. Similarly, public funds are used for the care of the mentally retarded individuals in this case. The distinguishing feature between a group home for children and the proposed group home for mentally retarded adults is the age of the residents.

The objectors contend that the Supreme Court's decision in *United Cerebral Palsy Association of Philadelphia and Vicinity v. Zoning Board of Adjustment*, 382 Pa. 67, 114 A.2d 331 (1955), is dispositive here. In *United Cerebral Palsy*, the court applied the rule of ejusdem generis in interpreting the phrase "hospitals, sanitaria, eleemosynary and public institutions" and concluded that the nature of the institutions must be that of hospitals or sanitaria.

The rationale in *United Cerebral Palsy* is not dispositive here. A group home for mentally retarded individuals is a relatively modern concept, appropriately governed by the analyses in *Children's Aid Society* and *Penrose*.

The borough and the objectors argue that, because the school would not be tax-exempt, its function is not charitable. However, the central concern of zoning regulations is the physical use to which the land is put, rather than abstract matters of legal status. *Sears Roebuck & Co. v. Power*, 390 Pa. 206, 134 A.2d 659 (1957). There, the court determined that sales law concepts were not relevant factors in interpreting zoning. Similarly, tax law concepts are not relevant to the determination here of whether the school would qualify as a charitable institution under the zoning ordinance.

Finally, the borough and the objectors argue, and the board concluded, that the proposed use was more like that of a rooming house, a conditionally permitted use in another zoning district. Section 2.200 of the zoning ordinance defines rooming house as:

ROOMING HOUSE, TO INCLUDE A BOARDING, LODGING OR TOURIST HOME—a building other than a dormitory, hotel, fraternity or sorority house containing not more than one dwelling unit occupied by a family and providing, for compensation, rooming units for the lodging of not more than ten (10) individuals in addition to the family.

However, this court has treated group homes for mentally retarded persons, living together semi-permanently as one household, as the functional equivalent of a single family, *Hopkins v. Zoning Hearing Board of Abington Township*, 55 Pa. Commonwealth Ct. 365, 423 A.2d 1082 (1980), rather than as a rooming house, which embraces the concept where the residents do not live together as the equivalent of a single-family household. Contrast this court's recent decision in *Repko v. Zoning Hearing Board of the City of Greensburg*, 102 Pa. Commonwealth Ct. 272, 517 A.2d 1028 (1986), in which this court affirmed a local board's determination that a shelter providing temporary housing and support services for abused women and their children, together with administrative offices, was allowable as a rooming house; in *Repko,* the evidence did not indicate that the shelter would function like a single-family household.

There is no logical inconsistency in a residential use existing as a charitable institution and functioning as a single household.

Accordingly, the trial court correctly determined that the board had erred in classifying this group home for mentally retarded adults as a rooming house, rather than as a charitable institution in accordance with *Children's Aid Society* and *Penrose*.[4] Because the re-

---

[4] The school raises constitutional arguments in support of the trial court's decision. Because we are affirming that decision on other grounds, we will not address those constitutional issues.

mainder of the board's decision indicates that the use of the residence as a group home for mentally retarded adults would not adversely affect the public interest, we must affirm the court's order to deny post-trial relief from its order directing that the school's application for a special exception be granted.

### ORDER IN 2119 C.D. 1985

Now, November 21, 1986, the order of the Court of Common Pleas of Butler County, at Docket No. 85-314, dated September 11, 1985, is affirmed.

### ORDER IN 2120 C.D. 1985

Now, November 21, 1986, the order of the Court of Common Pleas of Butler County, at Docket No. 85-314, dated September 11, 1985, is affirmed.