628 A.2d 1214

**Edward J. MARTIN and Augustine Sabastionelli, Appellants,**

**v.**

**The ZONING HEARING BOARD OF FOUNTAIN HILL, LE-HIGH COUNTY, Pennsylvania and Lehigh Valley Coalition Against Addiction and Hildegarde E. Bradney and Jane L. Washinski.**

Commonwealth Court of Pennsylvania.

Argued May 10, 1993.

Decided July 9, 1993.

Joseph Nanovic, for appellants.

Andrew Hermann, for appellees.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Edward J. Martin and Augustine Sabastionelli (collectively, Objectors) appeal an order of the Court of Common Pleas of Lehigh County (trial court) which denied Objectors' appeal from a decision of the Zoning Hearing Board of Fountain Hill (Board). We affirm.

In 1991, Lehigh Valley Coalition Against Addiction (LVCAA) filed a zoning application with the Borough of Fountain Hill (Borough) requesting a special exception to operate a rooming house for women completing Hogar CREA drug rehabilitation treatment and their children under the age of thirteen. The proposed rooming house is presently a five-unit apartment house owned by Hildegarde E. Bradney and Jane L. Washinski.

The subject property is located in a Medium High Density Residential (MHD–R) District. Pursuant to the Zoning Ordinance of the Borough of Fountain Hill (Zoning Ordinance),[1] a rooming house is permitted as a special exception in the MHD–R District. "BOARDING AND ROOMING HOUSE" is defined in Section 902 of the Zoning Ordinance as follows:

a building, other than a hotel or motel, containing a single dwelling unit where lodging is provided with or without meals for three (3) or more persons, who are not members of the operator's family, and by prearrangement for definite periods of time and for compensation, whether direct or indirect, but not to include rest homes or homes for the aged.

The Borough's Code Enforcement Officer denied LVCAA's zoning application. On appeal, the Board granted the special exception, concluding:

Applicant did in fact qualify as a rooming home. All of the residents are there for definite time periods, not to exceed two to three years as they were proceeding through their therapy. They were paying compensation for staying at the facility and their stay was for a prearranged time period, although it could be terminated if they violated the rules

---

1. Borough of Fountain Hill, Pa., Zoning Ordinance § 205.

such as taking drugs or alcohol into the facility. In addition, it was for three or more people that were not related to the operators and it was neither a home for the aged nor the elderly.

Without taking any additional evidence, the trial court denied Objectors' appeal.

 On appeal to this court, the sole issue presented is whether the proposed use of the subject property falls within the Zoning Ordinance's definition of rooming house.[2]

Noting that the residents of the subject property will undergo extensive therapy on a daily basis, Objectors argue that the proposed use is not that of a "rooming house" as that term is defined in common parlance or in the Zoning Ordinance. We disagree. Initially, we note that the "therapy" here is in the nature of face-to-face counseling and structured living arrangements, and is not of a medical character as inferred by Objectors.

In *Allegheny Valley School v. Zoning Hearing Board of Slippery Rock Borough*, 102 Pa.Commonwealth Ct. 290, 294, 517 A.2d 1385, 1387 (1986), we stated:

[a] special exception is a conditionally permitted use, legislatively allowed if the standards are met. A permitted use must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land. Ambiguities must be resolved in favor of the landowner.

(Citations omitted.)

In *Repko v. Zoning Hearing Board of the City of Greensburg*, 102 Pa.Commonwealth Ct. 272, 517 A.2d 1028 (1986), we

---

**2.** Our scope of review in a zoning appeal where no additional evidence was taken by the trial court is limited to determining whether the zoning hearing board manifestly abused its discretion or committed an error of law. *Smith v. Zoning Hearing Board of the Borough of Bellevue*, 152 Pa.Commonwealth Ct. 427, 619 A.2d 399 (1992). Whether a proposed use falls within a particular definition in a zoning ordinance is a question of law subject to our review. *See Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Commonwealth Ct. 206, 590 A.2d 65 (1991).

held that a proposed shelter, which would provide temporary housing and counseling to abused women and their children, was a rooming house. Although the zoning ordinance in that case did not define "rooming house", we stated, "[t]he phrase 'rooming house' is commonly defined as 'a house where lodgings are provided and let.' Webster's New Collegiate Dictionary (1977). In the broadest sense of the phrase, a structure designed to house domestic violence victims temporarily is a rooming house." *Id.* at 275, 517 A.2d at 1029–30. *See also Step–By–Step, Inc. v. Zoning Hearing Board of the Borough of McKees Rocks,* 117 Pa. Commonwealth Ct. 547, 543 A.2d 1293 (1988), *petition for allowance of appeal denied,* 522 Pa. 616, 563 A.2d 501 (1989) (Community living arrangements for mentally handicapped residents constituted rooming houses.).

Since the stated definition of rooming house in the present appeal must be given a broad interpretation, *Allegheny Valley School,* we conclude that, in general, the proposed use of the subject property falls within that definition.

■ However, Objectors also argue that the proposed use does not meet two specific requirements contained in the Zoning Ordinance's definition of rooming house. First, Objectors contend that the residents will not be lodging "for definite periods of time". Second, Objectors contend that four of the ten residents will not be paying "compensation" since they will receive free room and board for their work as staff members at the house.

As to the first contention, the Board concluded, "[a]ll of the residents are there for definite time periods, not to exceed two to three years as they were proceeding through their therapy. They were paying compensation for staying at the facility . . ." Although "two to three years" standing alone probably lacks the degree of definiteness required by the Zoning Ordinance, we agree with the trial court that the residents' "payment of [rent] presupposes periodic stays and renewals thereof." Trial court's memorandum opinion at 3. As such, the residents' lodging will be for sufficiently definite periods of time.

■ As to those four residents/staff members that will receive free room and board for their work at the house, such work constitutes "indirect" compensation, as specified in the definition of rooming house set forth in Section 902 of the Zoning Ordinance.

Since Objectors' arguments are without merit, we cannot say that the Board erred in concluding that the proposed use qualified as a rooming house. Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, July 9, 1993, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.

SILVESTRI, Senior Judge, dissenting.

The Lehigh Valley Coalition Against Addiction, Inc. (LVCAA), an organization involved in combating drug addiction in the Lehigh Valley filed an application with the Zoning Hearing Board (ZHB) of Fountain Hill Borough (Borough) for a special exception to use the property located at 541 Seneca Street as a rooming house for women completing Hogar Crea treatment and reeducation program, and for their children twelve years of age and younger.[1]

The property is located in a Medium High Density Residential District (MHD–R) in which a rooming house is permitted by special exception under section 205(4) of the ordinance. A rooming house is defined in Section 902 of the zoning ordinance.

The ZHB, after a public hearing, at which it heard testimony in support of the special exception as well as objections thereto by residents of the Borough, and observing that objectors:

[W]ere unable to present any sufficient testimony to allow the Zoning Hearing Board to conclude, based upon the

1. Decision of the ZHB, findings of fact (FOF) Nos. 1–4. (R.R. A–6.)

evidence presented that this particular use would provide a negative impact on the neighborhood. As such, the Zoning Hearing board was constrained by the laws of the Commonwealth and the Zoning Ordinance to allow this use by special exception.

The ZHB, with exception of setting forth the definition of a rooming house as contained in the ordinance, did not articulate what "laws of the Commonwealth" "constrained" it to allow the use by special exception. Nonetheless, the ZHB on November 18, 1991 issued the following order, as herein relevant:

NOW, THEREFORE, it is the decision of the Fountain Hill Zoning Hearing Board that the Applicants use be permitted and the special exceptions granted, conditioned on the following:

1. Maximum of ten women and twenty children be allowed to reside in the property.

2. That each woman have no more than two children.

. . . .

Edward J. Martin and Augustine Sabastionelli (Objectors) filed an appeal to the Court of Common Pleas of Lehigh County (trial court). The trial court took no additional testimony and, by order dated July 20, 1992, denied Objectors' appeal. The trial court filed a supporting opinion on December 21, 1992 in which it agreed with the ZHB that the use of the property as proposed by LVCAA was within the definition of "Boarding and Rooming House" as set forth in the ordinance.

The Objectors appealed here and the majority affirms the trial court. I disagree and file this dissent.

Both the trial court and the majority rely on *Repko v. Zoning Hearing Board of the City of Greensburg,* 102 Pa.Commonwealth Ct. 272, 517 A.2d 1028 (1986) as support for their decision.[2] I submit that such reliance is misplaced for

2. The majority also relies on *Step–By–Step, Inc. v. Zoning Hearing Board of the Borough of McKees Rocks,* 117 Pa.Commonwealth Ct. 547, 543 A.2d 1293 (1988) petition for allowance of appeal denied, 522 Pa. 616,

the reason that this court, by Judge Craig, noted that, "The Greensburg ordinance does not define 'rooming house'", then wrote:

> The courts give undefined terms of a zoning ordinance their plain, ordinary meaning assuming that an undefined term has been employed in its broadest sense. *Appeal of Mt. Laurel Racing Association*, 73 Pa.Commonwealth Ct. 531, 458 A.2d 1043 (1983).
>
> The phrase "rooming house" is commonly defined as "a house where lodgings are provided and let." Webster's New Collegiate Dictionary (1977). In the broadest sense of the phrase a structure designed to house domestic violence victims temporarily is a rooming house.

*Repko*, 102 Pa.Commonwealth Ct. at 275, 517 A.2d at 1029–1030.

Herein the ordinance does define "Boarding and Rooming House" as follows:

> [A] building, other than a hotel or motel, containing a single dwelling unit where lodging is provided with or without meals for three or more persons who are not members of the operators family, and by a prearrangement for definite periods of time and for compensation, whether direct or

563 A.2d 501 (1989) which is inapplicable. Step–By–Step appealed from the trial court's order affirming the zoning hearing board's sustaining citations issued against Step–By–Step for establishing three community living arrangements, without first obtaining special use permits, in a residential, R–2 district, permitting only one and two-family occupancies. Step–By–Step did not oppose the citations on the basis that it was conducting a boarding home or rooming house; its opposition was that it occupied the properties as "residential family units and, therefore it should not be required to seek a special use permit under the ordinance." This court held that the evidence did not support Step–By–Step's position that the occupants constituted a "family" as defined under the ordinance. Whether or not Step–By–Step's use and occupancy was as a rooming house was not before the zoning hearing board, the trial court or this court.

The trial court also relied on *United Cerebral Palsy Association v. Zoning Board of Adjustment*, 382 Pa. 67, 114 A.2d 331 (1955), which is misplaced. In *United Cerebral*, the court was construing the words "club house" and "dormitory", which were not defined in the ordinance then under consideration.

indirect, but not to include rest homes or homes for the aged.

The Oxford Universal Dictionary on Historical Principles; Third Edition (1955) defines "lodging" as "accommodation for rest at night or for residence; now only, accommodation in hired rooms, or in a lodging house." Also, Webster's Third New International Dictionary 1329 (1966) defines "lodging" as "sleeping accommodations", "a temporary place to stay, a room or rooms in the house of another used as a place of residence."

In support of its application for the special permit, LVCAA presented testimony of Dr. Peter Likens, Marlene Fowler and Anna Sesna as to the "persons" who would be residing in the Seneca Street facility as follows.

Dr. Peter Likens, president of Lehigh University, and a member of the board of directors of LVCAA, testified:

> We are trying to find ways to assist in the education of addictions [sic] in the Lehigh Valley, and specifically at the present trying to establish the facility on Seneca Street for *young women who are recovering from their addiction and have a need to care for their children in that process.* (R.R. A33.) (Emphasis added.)

Marlene Fowler, Chairperson of LVCAA, testified as follows:

> Q And is it correct that your organization plans to allow Hogar Crea of Pennsylvania to operate the property specifically as a rooming house *for mothers* involved in the Hogar Crea program who have already undergone Hogar Crea programs at its Pembroke Road facility in Bethlehem?
> A Yes.
> Q Is it also correct that the occupancy of the rooming house would potentially include *young children of those female residents* of this Seneca Street facility *12 years of age or younger?*
> A Yes.
> (R.R. A49.) (Emphasis added.)

Anna Sesna, project director for Hogar Crea Women's Center in Bethlehem, testified as follows:

Q Are you familiar with the proposed use of this property as a Hogar Crea rooming house *for women with children 12 years of age or younger?*

A Yes, I am.

. . . .

Q Now, I'm directing your attention to the second page which is indicated to be the second floor. Can you go through likewise with respect to the rooms depicted on that sketch?

A Okay. Well, basically, on the second floor the rooms will be utilized as bedrooms. The kitchen facility will be removed. The bathrooms will remain the same. The rest of the rooms will be sleeping quarters.

Q *And that will be sleeping quarters for women residents and perhaps children residents?*

A *And their children.* When I get to the point where I explain the structure of the program, I'll explain how that works.

Q Now, I'm directing your attention to the third floor. Can you take us through the rooms there also?

A The third floor will also be utilized for sleeping quarters. The kitchen appliances will also be removed out of the kitchen, and the bathroom will remain the same, and the bedrooms and the other space would be used as sleeping quarters.

Q *And, again, that will be for the women residents and perhaps children residents?*

A *Yes.*

. . . .

Q *Now, is there indeed an age limit of 12 years and no older with respect to the children who would be permitted to reside at the facility?*

A *Yes.*

Q *Is there also a limit of no more than two such children residing there per adult female residents?*

A *That's right, two children per resident maximum.*

Q *And those would be two children per mother?*

A *Un–hum.*

(R.R. A66 through A76.) (Emphasis added.)

By Mr. Repasch, a member of ZHB:

MR. REPASCH: Question number two, a child up to 12 years of age, suppose she has a child of 12 years of age that moves in there and now he's be there for 3 years. Now, he is 15. At what point must the child leave?

MS. SESNA: When the mother is ready for her children in the facility, she won't be in the facility for no longer than two and a half or three years.

MR. REPASCH: Well, three years, imagine—the child would then be 15 years of age and still living there.

MS. SESNA: Well, if it's a daughter—

MR. REPASCH: *Well, what about a son" A son would not be able to stay there, but you're going to let a daughter?*

MS. SESNA: *12 years of age is the limit.*

(R.R. A92–A93.) (Emphasis added.)

Q *Will any men be allowed to reside at the premises?*

A *No.....*

(R.R. A82.) (Emphasis added.)

It is clear beyond question that LVCAA will be using the Seneca Street building to provide lodging *only* to adult women who are in the process of attempting to overcome drug addiction, and for *only* two of their female children under twelve (12) years of age.

The ordinance authorizing a boarding and rooming house as a special exception requires such to be "a building ... containing a single dwelling unit where lodging is provided ... for three (3) or more persons...."

"Person" is not defined in the ordinance, but not surprisingly, is defined in the Oxford Universal Dictionary as "an

individual human being; a man, a woman or child." It would be naive to suggest that the Borough would consider "persons" as used in the ordinance to be other than men, women and children, since such are the only kind of persons there are.

LVCAA will not be using the Seneca Street building to provide lodging for male adults or male children of any age or female adults who are not addicted to drugs or female children over twelve (12) years of age or more than two (2) female children under twelve (12) years of age of the same addicted adult female. The limiting of lodging to only addicted adult females and only two of their female children under 12 years of age to the exclusion of all other persons places the Seneca Street property outside the definition of a "Boarding and Rooming House."

Accordingly, I would reverse the trial court.