Michael LENCH, Appellant

v.

ZONING BOARD OF ADJUSTMENT
OF the CITY OF PITTSBURGH
and Regina A. Lis.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 2004.
Decided June 18, 2004.

Stuart M. Levine, Pittsburgh, for appellant.

Thomas H. Ayoob, III, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Michael Lench (Lench) appeals from the January 5, 2004, order of the Court of Common Pleas of Allegheny County (trial court), which affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) to deny Lench's application to expand an existing nonconforming use. We reverse.

On May 13, 2002, Lench obtained ownership of the property located at 178–180 Pius Street in the City of Pittsburgh (Property). The Property is zoned Residential Multi–Unit, Moderate Density (RM–M). (Findings of Fact, Nos. 1, 5.)

The Property contains two attached buildings forming a U-shaped structure. Facing the Property from Pius Street, the right portion of the U-shaped structure is an L-shaped, one-story, red brick building containing two large rooms. The front room was the meeting hall of the Workingmen's Beneficial Union District No. 6 (WBU), a private social club, and the rear room was the WBU's bar and entertainment area. The left portion of the U-shaped structure is a white, single family dwelling unit which served as a residence for the caretaker of the WBU club. There are two uncovered walkways on the Property. One walkway separates the WBU club and the caretaker's residence (center walkway); the other is to the left of the residence and adjacent to the property at 182 Pius Street (left walkway). (Findings of Fact, Nos. 2, 8, 10.)

Lench planned to erect a solid roof over the two walkways, transform the WBU meeting hall into a restaurant with a liquor license and convert the kitchen in the caretaker's dwelling unit into a kitchen for the restaurant. To this end, Lench applied for occupancy and alteration permits.[1] However, the zoning administrator disapproved the application, ruling that Lench needed a special exception and variance. Lench filed an appeal with the Board, arguing that the proposed use was sufficiently similar to the nonconforming use that a special exception and variance were not required. (Findings of Fact, No. 2; O.R. Board's exhibits 2 & 3; R.R. at 7a, 11a–12a.)

After a hearing on the matter, the Board found that the WBU, which had occupied the structure since 1922, served alcoholic beverages and provided entertainment with bands on Friday and Saturday nights. However, the WBU club did not have a kitchen to prepare and serve food. (Findings of Fact, Nos. 11–12.) Lench's proposed restaurant would be an upscale, white tablecloth establishment, operating seven days a week. The restaurant would provide service from 11:00 a.m. until 10:00 p.m. on Monday to Thursday, from 11:00 a.m. until 11:00 p.m. on Friday and Saturday and from 12:00 noon until 9:00 p.m. on Sunday. (Findings of Fact, No. 13.)

Based on the above findings, the Board concluded that the proposed restaurant does not constitute the natural expansion of the prior nonconforming use. Lench appealed the Board's determination to the trial court, which affirmed. Lench now appeals to this court. Where, as here, the trial court did not take additional evidence, our scope of review is limited to whether the Board committed a manifest abuse of discretion or an error of law. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54 (1993).

Lench argues that, based on *Limley*, the Board erred in concluding that the conver-

---

1. We note that, according to the Board's findings, Lench did not know whether he would secure a liquor license. (Findings of Fact, No. 13.) However, Lench's permit application seeks a permit for a "1–story restaurant with liquor license." (O.R., Board's ex. 2.)

sion of the WBU club into a restaurant does not constitute a natural expansion of a nonconforming use. We agree.

■ Our supreme court has stated that to qualify as a continuation of an existing nonconforming use, "a proposed use must be sufficiently similar to the nonconforming use as not to constitute a new or different use. The proposed use need not, however, be identical to the existing use; rather, similarity in use is all that is required." *Limley*, 533 Pa. at 343, 625 A.2d at 55 (citations omitted). "[T]he nature of a nonconforming use must be determined from the actual use to which the property is being put rather than from the identity of the users. Labeling the users as members and guests of a private club or as members of the general public is not determinative of the actual use of the premises." *Id.* at 346, 625 A.2d at 57.

■ In determining whether a proposed use bears adequate similarity to an existing nonconforming use, courts must give effect to the doctrine of natural expansion, which permits a landowner to develop or expand a nonconforming business as a matter of right. *Id.* The doctrine of natural expansion supports increased intensity in a property's utilization, e.g., an increase in the number of users or an increase in the frequency of a use.[2] *Limley; Foreman v. Union Township Zoning Hearing Board*, 787 A.2d 1099 (Pa. Cmwlth.2001). A court cannot utilize an overly technical assessment of a nonconforming use to stunt its natural development and growth. *Limley*.

■ The nonconforming use in this case is the operation of a private club that serves alcoholic beverages and, occasionally, provides live band performances. The proposed use is the operation of a public restaurant with a liquor license. Like the WBU club, the proposed restaurant would be a social gathering place serving alcoholic beverages and providing occasional entertainment. *See Limley* (stating that a private club serving food and alcoholic beverages is similar to a restaurant and bar because both are social gathering places that occasionally provide musical entertainment).

The only question is whether the lack of food preparation and food service at the WBU club prevents us from concluding that the proposed public restaurant is the natural expansion of the private WBU club. Our supreme court has criticized this court for making a distinction between a use which caters to the public and a use which serves members of a private club. *Limley*. With that in mind, we note that if we were to treat the WBU club as a neighborhood bar which served alcoholic beverages to the public, instead of a private club which served alcoholic beverages to its members, the law would require the neighborhood bar to provide food service. See section 406(a)(1) of the Liquor Code, Act of April 12, 1951, P.L. 90, as amended, 47 P.S. § 4–406(a)(1) (indicating that there is no public equivalent to a private club liquor license which permits the selling of alcoholic beverages to members without the serving of food). In other words, no one could expand the nonconforming use in this case to include serving alcoholic beverages to the public without adding food service.[3] On this basis, we conclude that

---

2. The doctrine of natural expansion also supports the extension of a nonconforming use within a single structure. *Zoning Board of Adjustment v. Ogontz Area Neighbors Association*, 51 Pa.Cmwlth. 280, 414 A.2d 419 (1980). Thus, here, because the Property constitutes a single structure, it is permissible for Lench to expand the nonconforming use within the Property.

3. There is no question that a nonconforming use may be expanded to increase the number of users. *Limley*.

the proposed restaurant constitutes the natural expansion of the nonconforming use.

Accordingly, we reverse.

## ORDER

AND NOW, this 18th day of June, 2004, the order of the Court of Common Pleas of Allegheny County, dated January 5, 2004, is hereby reversed.