**Michael M. LENCH and Thomas P. Lench, Appellants**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH and City of Pittsburgh and Eric Dilucente and Edward A. Contestabile, Jr., and Janet T. Contestabile.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2009.

Decided May 28, 2009.

Thomas J. Michael, Pittsburgh, for appellants.

Lawrence H. Baumiller, Pittsburgh, for appellees, Zoning Board of Adjustment of the City of Pittsburgh and City of Pittsburgh.

Joseph A. Fricker, Jr., Pittsburgh, for appellee, Eric Dilucente.

Robert B. Brown, Jr., Pittsburgh, for appellees, Edward A. Contestabile, Jr. and Janet T. Contestabile.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Michael M. Lench and Thomas P. Lench (together, Appellants) appeal from the June 12, 2008, order of the Court of Common Pleas of Allegheny County (trial court) that affirmed the decision of the City of Pittsburgh Zoning Board of Adjustment (ZBA) denying Appellants' appli-

cation for a special exception and related variances to expand an existing nonconforming use. We affirm.

Appellants own and operate a restaurant located at 178–180 Pius Street in the City of Pittsburgh (Property). The Property currently is zoned R1A–VH (one-family residence, very high density), and the restaurant exists there as a legal nonconforming use. *See Lench v. Zoning Board of Adjustment*, 852 A.2d 442 (Pa.Cmwlth. 2004). In addition, the 4,000 square-foot, single-story building that houses the restaurant is a dimensionally nonconforming structure.

Appellants wish to construct a second-story addition onto the existing structure that would provide additional indoor dining space as well as a rooftop deck for outdoor dining. Appellants applied to the City of Pittsburgh (City) for occupancy and building permits for the addition, and when the City denied the application, they appealed to the ZBA.

Because section 921.02.A.1 of the City of Pittsburgh Zoning Code (Code) allows for expansion of nonconforming uses only when approved by the ZBA as a special exception,[1] the ZBA considered Appellants' application based on the general criteria for special exceptions set forth in Code § 922.07.D.1.[2] At the May 17, 2007, public hearing on Appellants' application, Michael

Lench testified regarding Appellants' current restaurant use, the details of, and Appellants' need for, the proposed expansion and the possible mitigation of resulting problems. In addition, various neighboring residents testified in opposition to Appellants' application, voicing their concerns that expansion of the restaurant would substantially increase the problems that already exist as a result of the restaurant's presence in the neighborhood.

Based on the evidence presented, the ZBA made twenty-four findings of fact, which may be summarized as follows.

The proposed addition would be approximately twelve to fourteen feet high and would increase the space devoted to dining by 2,600 square feet (700 feet for the deck and 1,900 square feet for indoor dining), thereby expanding the restaurant's floor area by 56% and effectively doubling the restaurant's capacity. (ZBA's Findings of Fact, Nos. 4, 6.) Although Appellants do not plan to expand the current kitchen facilities, they intend to double patron seating from its present eighty seats to 160. However, the proposed vertical addition would not increase the dimensional non-conformity of the existing structure. (ZBA's Findings of Fact, Nos. 7–8.)

Appellants currently use a nearby lot with a capacity of fifteen spaces for restau-

---

1. We note that the ZBA incorrectly identifies this Code section as § 922.02.A.1, (ZBA's decision, R.R. at 23a–25a), and the trial court repeats this error, (Trial ct. op. at 2–3).

2. Code § 922.07.D.1 provides that the ZBA shall approve special exceptions only if the general criteria for a special exception are met, specifically, where it is determined that the development will not create:
   (a) detrimental visual impacts on the surrounding area;
   (b) detrimental transportation impacts on the safety and convenience of residential neighborhoods in the vicinity;

   (c) detrimental transportation impacts on streets and intersections likely to be used to and from the proposed development;
   (d) detrimental operational impacts from any on-site operations associated with the use, in consideration of surrounding land uses;
   (e) detrimental health and safety impacts, including noise, emissions, or vibrations as a direct result of the operation of the use;
   (f) detrimental impacts on the development of parcels in the vicinity; and
   (g) detrimental impacts on property values.

rant parking. Valets work on Fridays and Saturdays, and the lot is available for self-parking the rest of the week; additional restaurant patrons and employees must make use of on-street parking. Because Pius Street is one-way, valets must travel around the block on narrow, hilly streets to park cars in the restaurant's lot; typically, thirty to forty trips are required on a Friday or Saturday, and that number would increase with the increase in restaurant patrons. Although proposals for additional parking were discussed, Appellants presented no specific proposal to the ZBA. (ZBA's Findings of Fact, Nos. 10–14.)

The credible testimony of neighboring residents, based on their actual experience with the Property's current level of use, establishes that the restaurant has a real and substantial impact on the residential neighborhood with regard to parking, traffic, noise, odors and garbage. The proposed addition to the existing nonconforming use, with its outdoor dining component, would increase these negative impacts. Although Appellants indicated a willingness to mitigate some of these problems, they presented no specific proposal for

doing so to the ZBA. (ZBA's Findings of Fact, Nos. 15, 17–23.)

Appellants currently are able to make reasonable use of the Property for the existing restaurant. In fact, Lench indicated that the current restaurant use is popular, and sometimes patrons must be turned away. Although Lench testified that the proposed expansion was necessary for the continued viability of the restaurant, Appellants presented no evidence to support the need for a 56% increase in floor area and no evidence that the business would close if the expansion were not permitted. Rather, Lench simply indicated a desire to take advantage of an increase in business. (ZBA's Findings of Fact, Nos. 16, 24.)

Based on these findings, the ZBA recognized that Appellants' request to expand the restaurant's floor area by 56% violated section 921.02.A.1 of the Code, which permits only a 15% increase in the floor area of a nonconforming use in a residential zoning district.[3] Therefore, the ZBA concluded that Appellants were required to seek a variance from the 15% limitation.[4]

---

3. With respect to limitations on the enlargement of nonconforming uses, Code § 921.02.-A.1(a)(1) prohibits the ZBA from allowing as a special exception

> any enlargement, expansion or extension that has the effect of increasing the total floor area or lot coverage of a nonconforming use by more than twenty-five (25) percent in a non-residential zoning district or by more than fifteen (15) percent in a residential zoning district, when compared to the floor area or site area coverage of the nonconforming use at the time it became nonconforming.

> Under the Code, exterior or interior remodeling or improvements to a structure containing a nonconforming use are permitted, provided that any proposed enlargement or expansion is subject to the provisions of Code § 921.02.A.1.Code §§ 921.02.A.2 and 921.03.A.3; *see also* Code § 921.03.A.4 (stat-

ing, *inter alia*, that construction of additions shall be considered as improvements). In addition to the violation of Code § 921.02.-A.1, the ZBA also noted that Appellants' proposed expansion required consideration of the need for additional parking spaces pursuant to Code § 914.02.A and consideration of the residential compatibility standards set forth in Code § 916.01.A. (ZBA's Findings of Fact, Nos. 29–30.)

4. Code § 922.09.E provides that the ZBA shall not grant a variance unless it finds all of the following conditions: (1) that the appellant suffers unnecessary hardship due to physical circumstances or conditions peculiar to the particular property; (2) that because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance, and a variance is necessary to enable the reasonable use of

After considering the criteria for special exceptions and variances, respectively, the ZBA concluded that granting Appellants' request for a 56% expansion of the restaurant use would not be appropriate. The ZBA reasoned that the existing restaurant already has a significant detrimental effect on the surrounding area, and the proposed expansion would increase that negative impact and further alter the residential character of the neighborhood.[5] Moreover, the ZBA concluded that Appellants did not demonstrate the need for a variance to enable them to make reasonable use of the Property, nor did they show that the relief requested was the minimum necessary. (ZBA's Conclusions of Law, Nos. 1–11.) Thus, in a decision dated August 9, 2007, the ZBA denied Appellants' request for approval of the proposed expansion of the nonconforming use, including denial of the request for a special exception and variance. Appellants appealed to the trial court,[6] which, by order dated June 12, 2008, affirmed the ZBA's decision and denied the appeal.

■ On appeal to this court,[7] Appellants argue that: (1) the ZBA erred in denying Appellants' application for a proposed expansion of the existing nonconforming use of the Property; (2) the ZBA erred in denying Appellants' request for a special exception for the proposed expansion of the existing nonconforming use of the Property; and (3) the ZBA's decision was not based on substantial evidence of record.

■ Appellants first argue that the ZBA erred in denying their application for the proposed restaurant addition based on the 15% expansion limitation contained in Code § 921.02.A.1. According to Appellants, such a decision is contrary to Pennsylvania law recognizing the constitutional right of property owners to expand pre-existing, legal nonconforming uses of their property. This right, known as the doctrine of natural expansion, permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use. *Limley v. Zoning Hearing Board*, 533 Pa. 340, 625 A.2d 54 (1993).

Citing numerous cases, Appellants maintain that, under this doctrine, municipalities lack the power to prevent the owner of nonconforming property from making *what that owner views as necessary additions* to an existing structure in order to expand the owner's business to maintain economic viability or to take advantage of increases in trade. Further, Appellants assert that municipalities may restrict

the property; (3) that the appellant did not create the unnecessary hardship; (4) that the variance will not alter the essential character of the neighborhood, impair the use or development of adjacent property, or be detrimental to the public welfare; and (5) that the variance represents the minimum that will afford relief.

5. Code § 921.02.A.5 provides that the applicant has the burden of proving that the proposed change or expansion or extension of nonconforming use will not result in greater negative impacts on nearby residents and properties.

6. Thereafter, the City intervened as a matter of right, and the trial court granted the peti-

tions to intervene filed by Eric DiLucente, Edward A. Contestabile, Jr. and Janet T. Contestabile.

7. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the ZBA committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). The ZBA abuses its discretion only if its findings are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*

such expansion of nonconforming uses *only* where the additions would be detrimental to the public welfare, safety and health. Appellants contend that, because there is no connection between the Code's arbitrary 15% limit on expansion of floor area dedicated to a nonconforming use and any such detrimental effects, the limitation in the Code is not reasonable or enforceable.[8] We disagree.

■ Appellants are correct that property owners have a constitutional right to expand a pre-existing nonconforming use to accommodate increased trade; accordingly, ordinances that prohibit *per se* the natural expansion of a nonconforming use have been deemed unconstitutional. *See PA Northwestern Distributors, Inc. v. Zoning Hearing Board,* 526 Pa. 186, 584 A.2d 1372 (1991); *Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 255 A.2d 506 (1969). However, courts have consistently recognized that the right of expansion is not unlimited and that reasonable restrictions on such extensions are permissible and enforceable. *See, e.g., Silver; Philadelphia Art Alliance v. Zoning Board of Adjustment,* 377 Pa. 144, 104 A.2d 492 (1954); *Humphreys v. Stuart Realty Corporation,* 364 Pa. 616, 73 A.2d 407 (1950); *West Central Germantown Neighbors v. Zoning Board of Adjustment,* 827 A.2d 1283 (Pa.Cmwlth.2003), *appeal denied,* 577 Pa. 692, 844 A.2d 555 (2004); *Finegan v. Board of Supervisors,* 826 A.2d 76 (Pa. Cmwlth.2003); *Jenkintown Towing Service v. Zoning Hearing Board,* 67 Pa. Cmwlth. 183, 446 A.2d 716 (1982).

Appellants assert that the proposed vertical expansion will not increase the non-

conformity of either the use or the structure in that the current Code allows for buildings up to three stories high, and the requested second floor space would contain the identical use as that now existing on the building's first floor. Thus, Appellants assert that, under *Nettleton v. Zoning Board of Adjustment,* 574 Pa. 45, 828 A.2d 1033 (2003), and *Lench,* they can expand the restaurant as a matter of right, limited only by a proven infringement on public health, safety and welfare. Because *Nettleton* and *Lench* are easily distinguished, Appellants' reliance on these cases is misplaced.

In *Lench,* we gave effect to the doctrine of natural expansion and held that Appellants were entitled to convert a legally nonconforming private social club that served alcohol into a restaurant with a liquor license as a continuation of the nonconforming use *within that single structure. Lench.* However, because there was no request to increase the floor space dedicated to the nonconforming restaurant use, *Lench* does not apply here.

In *Nettleton,* the landowner sought permission for a two-story vertical addition to a dimensionally nonconforming building in order to increase a residential use permitted by right in the zoning district. Therefore, the issue presented was whether the expansion was permitted pursuant to Code § 921.03.D.1, having to do with the enlargement and expansion of nonconforming *structures.* Appellants here seek expansion of both a nonconforming structure *and* a nonconforming use. Because the rationale in *Nettleton* applies only to the former, that case is inapplicable here.[9]

---

8. Appellants maintain that this is particularly true in the present case because the restaurant building extends to the boundary lines of the lot, so that expansion of the restaurant can be achieved only by adding a second floor. Appellants contend that if the expan-

sion to the second floor is denied, they will be denied any expansion of the nonconforming use.

9. In fact, in footnote one of *Nettleton,* the court recognizes the significance of that dis-

■ Because Pennsylvania case law allows the City to place a percentage limitation on the expansion of a nonconforming use, Appellants were required to obtain a variance for an expansion that exceeded that percentage. *West Central; Jenkintown.* Notably, at the outset of the hearing before the ZBA, counsel for Appellants acknowledged that the proposed expansion would require application for, and approval of, both a special exception and a variance from the Code's 15% limitation. (N.T. at 56a–57a.) However, because Appellants fail to raise their entitlement to a variance in this appeal, the issue is waived. Pa. R.A.P. 2116(a). Accordingly, Appellants cannot prevail. Moreover, even if the issue had not been waived, the record supports the ZBA's determination that there was no evidence that the proposed expansion was the minimum necessary to enable

Appellants to make reasonable use of the Property; therefore, Appellants could not meet the conditions for approval of a variance set forth in section 922.09.E of the Code.[10]

Accordingly, we affirm.

## ORDER

AND NOW, this 28th day of May, 2009, the order of the Court of Common Pleas of Allegheny County, dated June 12, 2008, is hereby affirmed.

---

tinction, noting that the same landowner had been denied a prior application to erect a two-story vertical addition to expand the nonconforming office use that previously had been in the building. The court in *Nettleton* observed that "[s]ince offices are not a permitted use in [these] zoning districts, ... the application refused [in the prior zoning case], unlike that here presented, involved the expansion of a nonconforming *use*." *Nettleton,* 574 Pa. at 48, n. 1, 828 A.2d at 1035, n. 1 (emphasis in original).

10. We also reject Appellants' final argument, i.e., that the record does not contain substantial evidence that can form the basis for a

reasonable person to believe that the proposed expansion would cause a detrimental impact on any of the criteria for a special exception. Here, the ZBA expressly credited the testimony of neighboring property owners who described their actual experience with the existing restaurant and complained about the resulting parking congestion, traffic back-ups, noise, cooking odors and garbage issues. Such testimony provided substantial evidence to support the ZBA's conclusion that doubling the restaurant's capacity would increase these detrimental impacts to the point that the expansion would harm the residential neighborhood and, thus, should not be permitted.