# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richland Properties, Inc.              :
                                       :
          v.                           :
                                       :
Zoning Hearing Board of the Township   :
of McCandless, Pennsylvania            :
                                       :  No. 105 C.D. 2018
          v.                           :
                                       :  Submitted:  October 16, 2018
Shults Ford Inc. and Township of       :
McCandless                             :
                                       :
Appeal of:  Township of McCandless     :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED:  November 6, 2018


The Town of McCandless (Town)[1] appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that reversed the decision and order of the Town's Zoning Hearing Board (Board).  In its decision, the Board denied the statutory appeal filed by Richland Properties, Inc. (Richland) of an enforcement

_____

[1] Although dubbed in the caption as the Township of McCandless, in 1974 the municipality changed its name to the Town of McCandless.  *See* Section 101 of The Charter of the Town of McCandless.

notice that cited it for conducting "Motor Vehicle Sales and Service" in a district where the use is not permitted.

The trial court set forth the following facts:

> [Richland] owns the subject property at 9700 McKnight Road in the [Town], which it purchased in October 2016. The Intervenor, Shults Ford, leases a portion of the subject property to park excess cars from its auto dealership, which is at another location. No sales or maintenance is conducted on the premises, and the Intervenor testified that no customers had ever been taken to the site. On December 13, 2016, Mr. Betty, Land Use Administrator and Zoning Officer, visited the subject property and found approximately 200 new cars parked on the property. The [Board] issued an Enforcement Notice to cease storing cars on the subject property because Motor Vehicle Sales and Service is not permitted in the D-Development District. Richland filed an appeal of the Enforcement Notice stating that the parking is not for Motor Vehicle Sales and Service and the parking is a nonconforming prior use. The Board held a hearing on February 23, 2017. At the hearing, testimony was entered that indicated parking took place on the subject property since 1979 in connection with an adjacent movie theater and that short-term parking had been allowed on the property since 1982 because of an unofficial Allegheny County Port Authority Park and Ride, which was a preexisting nonconforming use. The park and ride portion of the parking lot was sold to Allegheny County in 2015 when it became the official park and ride. The Board denied Richland's appeal, deciding that storage of vehicles in conjunction with a car dealership is not allowed in the D-Development District. The Board also rejected that it was a nonconforming prior use.

(Trial court op. at 2-3.)[2]

---

[2] This recitation is entirely consistent with the Board's findings of fact. *See* Board's Findings of Fact (F.F.) at Nos. 8-32.

2

Without taking additional evidence, the trial court reversed the Board in an opinion and order dated December 14, 2017. In so deciding, the trial court concluded that Richland, by and through Intervenor (collectively, Richland), did not engage in Motor Vehicle Sales and Service:

> The common usage of motor vehicle sales implies that a sale take place and service implies that there is some sort of maintenance being performed on the vehicles. As the evidence indicates, no sales or service were performed on the vehicles on the lot, and testimony was given that there were never any customers brought to the lot. The vehicles [are] simply parked in a parking lot . . . . until the Intervenor removes them.

*Id.* at 4-5.

The trial court also concluded that Richland merely continued a preexisting nonconforming use, albeit with an increase in the intensity of the use, which is permitted under the doctrine of natural expansion.[3] In this regard, the trial court determined that "use of the property for parking for storage is sufficiently similar to parking for a park and ride and customer business purposes." *Id.* at 4.[4]

---

[3] "[T]he doctrine of natural expansion permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use." *Lench v. Zoning Board of Adjustment of the City of Pittsburgh*, 974 A.2d 551, 555 (Pa. Cmwlth. 2009). However, "to qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use to a sufficient degree so as to not constitute a new or different use." *Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 410. (Pa. Cmwlth. 2009).

[4] By way of contrast, the Board concluded:

> 34. The [Board] accepted the evidence that the Property is a parking lot that was originally utilized for parking ancillary to the movie theater. After the movie theater closed, patrons of other businesses . . . would occasionally park on the Property while they visited the business.

**(Footnote continued on next page…)**

3

The Town now appeals to this Court.[5]  It first argues that the trial court erred in concluding that Richland was not conducting Motor Vehicle Sales and Service unlawfully in the D-Development District.  The Town asserts that Motor Vehicle Sales and Service is permitted only in the C-3 Zoning District and both the Board and Zoning Officer Betty reasonably interpreted the Ordinance to prohibit the

--------

**(continued…)**

> 35.  An adjacent property is utilized as a Park and Ride in conjunction with the Port Authority's public transportation services.  The Park and Ride designation and use is different from storage of vehicles.  The Park and Ride is for short-term parking for commuters, which is typically not overnight.  In any event, that Park and Ride is located on a separate parcel.
>
>         *      *      *
>
> 43.  The [Board] in this matter does not find that overnight parking and storage of vehicles accessory to an automobile dealership is a continuation of infrequent parking by non-customers to patronize businesses in the area, nor is it a natural expansion of such use.
>
> 44.  A parking lot ancillary to a business is a temporary place for a patron to park his or her car while patronizing a business.
>
> 45.  The storage of hundreds of cars for extended periods of time ancillary to a car dealership is simply a different use.

(Board's Conclusions of Law (COL) Nos. 34-35, 43-45.)  In addition, the Board noted that, in its appeal from the enforcement notice, Richland did not check the box on the form requesting a use variance and chose not to present any evidence pertaining to a variance.  (Board's F.F. at No. 9; COL Nos. 46-47.)

[5] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010). Whether a proposed use falls within a given category of permitted or prohibited uses in a zoning ordinance is a question of law. *Galzerano v. Zoning Hearing Board of Tullytown Borough*, 92 A.3d 891, 894 (Pa. Cmwlth. 2014).

4

off-site storage of new vehicles as an accessory use to such sales and services. We find no merit in these contentions.

It is a principle entrenched in the law: "zoning ordinances are to be liberally construed to allow the broadest possible use of land," *Ligo v. Slippery Rock Township*, 936 A.2d 1236, 1238 (Pa. Cmwlth. 2007), or, in other words, "to give the landowner the benefit of the least restrictive use." *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). "The permissive widest use of the land is the rule and not the exception," and, "[a]s such, restrictions as to what a landowner may/may not do with his land must not be construed as to fetter the use of that land by implication." *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 164 A.3d 633, 640 (Pa. Cmwlth. 2017). Indeed, "[t]his Court has held that it is an abuse of discretion for a zoning hearing board to narrow the terms of an ordinance and further restrict the use of a property." *Reihner v. City of Scranton Zoning Hearing Board*, 176 A.3d 396, 400 (Pa. Cmwlth. 2017).

In interpreting a zoning ordinance, we initially look at the plain language of the text, *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015), and are "guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertisement, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). In conducting this analysis, the Court is mindful "that the setting in which language is used informs our understanding of the particular language employed," *Kohl*, 108 A.3d at 969, and "that the meaning of words may be indicated or controlled by those words with which they are associated."

*Commonwealth ex rel. Fisher v. Philip Morris, Inc.*, 4 A.3d 749, 756 n.9 (Pa. Cmwlth. 2010). To ascertain and provide a natural construction of language and phrases, we may consult dictionaries and can draw upon common sense and basic human experience. *Kohl*, 108 A.3d at 969.

The Town's zoning ordinance (Ordinance) does not define the activity comprising "Motor Vehicle Sales and Service." However, section 1341 of the Ordinance, entitled "Uses," describes the standards of—and imposes requirements on—the use as follows: "Outside sales area must be paved, dust free and adequately drained. Repair and wash operations must be done inside a building. Minimum yard depth from any repair or wash operation to any residential property is 100 feet." Ordinance, §1341.05 (Motor Vehicle Sales and Service).

To sustain the enforcement notice, the Town carried the burden of proving that Richland utilized the property in violation of the Ordinance. The parties do not dispute that, under the Ordinance, Richland cannot operate Motor Vehicle Sales and Service in the D-Development District.

In construing the clause "Motor Vehicle Sales and Service," we observe that the attributive or adjunct noun is a "motor vehicle," which, as the main subject, modifies the terms "sales" and "service." In doing so, "motor vehicle" describes a quality of the words "sales" and "service" and, thus, serves as an adjective. In this context, and based upon the standard dictionary definitions, the nouns "sales" and "service" denote, respectively, "the act of selling" a motor vehicle and "to repair or provide maintenance for" a vehicle.[6] Similarly, the Ordinance, in a descriptive (or perhaps illustrative) manner, postulates that in an area where Motor Vehicle Sales

---

[6] Webster's Third New International Dictionary, 2003 & 2075 (Gove, ed. 1986).

6

and Service occur, there will be an "outside sales area" and/or a "repair or wash operation." Ordinance, §1341.05.

Given these designations, we find no error in trial court's interpretation and application of the operative phrase to the facts of this case. Even at farthest reach, the term "sale" requires, at a bare minimum, that a customer not only be present on the property to view and inspect a motor vehicle, but must additionally be able to purchase, or negotiate the price for, a vehicle from or on the property. On the other hand, when stretched to the periphery of the boundary line, the term "service" necessitates, at the very least, that there be some kind of activity on the property that is designed to maintain the vehicle of a customer in the sense that it preserves the vehicle functionally or enhances it aesthetically. Through deduction, and viewed collectively, a "sale" and "service" both entail the presence of a customer, or someone acting on the customer's behalf, even if it is only to drop off a customer's previously purchased vehicle for inspection, maintenance, or repair.

In light of the uncontroverted evidence and the Board's findings of fact, and assuming, for argument's sake, the premise that "sales" and "service" are disjunctive in nature,[7] we conclude that the Town failed to demonstrate that either situation transpired on the property. *See, e.g.*, Board's F.F. at Nos. 19 ("[Zoning Officer] Betty did not witness 'sales' or 'service' on the property."); 20 ("[Richland] does not technically sell vehicles from the Property or bring customers to the Property."). Instead, for the purpose of juxtaposition, what does happen on the property is probably best described as the "storage" of motor vehicles—"a place for

---

[7] That is, as "one or the other of two or more alternatives." *In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007).

storing . . . for future use"[8]—and both Zoning Officer Betty and the Board have formally and consistently characterized the conduct as such. *See, e.g.*, Board's F.F. at No. 12 ("The Enforcement Notice was written for storage of automobiles in connection with Motor Vehicle Sales and Service."); 18 ("[T]he Property is used as an overflow lot for car storage.").[9] On this understanding, the "sale" or "service" of a motor vehicle is a forthcoming event that will ensue (if at all) when Richland transports the vehicles to its auto dealership, which is located off-site and in another zoning district.

In a seeming effort to escape this result, the Town describes vehicle storage as an "accessory use" and associates it inexorably with the primary use of Motor Vehicle Sales and Service, therefore implying that the two are conjoined and cannot be considered as separate uses. *See* Town's brief at 8 ("Storage of excess inventory accessory to an off-site automobile dealership is not one of the commercial uses permitted.").

However, the Ordinance itself disavows such a connection, and so must we. While the storage of vehicles may be "customarily incidental" to the use of Motor Vehicle Sales and Service, pursuant to the terms of the Ordinance, an "accessory use" must be "located on the same lot as the principal structure or use served." Ordinance, §1311.04(122). Here, the vehicles are stored on a piece of property that is not contiguous with the land where the auto dealership is located. *See* Reproduced Record (R.R.) at 78a; Ordinance, §1311.04 (76) ("'Lot' means a parcel,

---

[8] Webster's Third New International Dictionary, 2252 (Gove, ed. 1986).

[9] *See also Pietropaolo v. Zoning Hearing Board of Lower Merion Township*, 979 A.2d 969, 978 (Pa. Cmwlth. 2009) (noting a municipal zoning ordinance that defined a "storage garage" as a building "used solely for the storage of motor vehicles . . . but not for the sale, service, or repair of motor vehicles.").

tract or area of land, undivided by any street or private road as established by a plat or otherwise as permitted by law and to be used, developed or built upon as a unit."). "Where a statute or ordinance defines a word or phrase, the court is bound thereby." *Slice of Life*, 164 A.3d at 640. Consequently, as a matter of law, the parking lot on which the vehicles are stored cannot be attached with (or otherwise deemed to share the same identity and label of) the primary use of Motor Vehicle Sales and Service.

Nor can the Town resort to the theory that interpretive deference is owed to the Board and Zoning Officer Betty to alter the above conclusions. As a general matter, the courts afford the interpretation proffered by a zoning hearing board and/or a zoning officer some degree of deference. *See Kohl*, 108 A.3d at 968-69. However, if that interpretation is inconsistent with the plain language of the ordinance, or where the meaning of the ordinance is unambiguous, the "interpretation carries little or no weight." *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (en banc). This is because "a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance." *Greth Development Group, Inc. v. Lower Heidelberg Township Zoning Hearing Board*, 918 A.2d 181, 187 (Pa. Cmwlth. 2006); *see Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408, 414 (Pa. Cmwlth. 2017). Therefore, since our reading of Motor Vehicle Sales and Service rests upon the clear and unambiguous language of the Ordinance, and the interpretation of the Board and Zoning Officer Betty is at odds with that language, we do not believe that their interpretation is entitled to any measure of deference.

The Town also argues that the current use of the property is prohibited under the Ordinance due to the fact that it is not expressly permitted in the D-Development District. We disagree. "Simply because an ordinance does not

expressly permit a use does not mean that it prohibits that use." *Pegasus Tower Co., LTD. v. Upper Yoder Township Zoning Hearing Board* (Pa. Cmwlth., No. 192 C.D. 2017, filed January 23, 2018) (unreported), slip op. at 11[10] (quoting *APT Pittsburgh Limited Partnership v. Lower Yoder Township, Cambria County*, 111 F. Supp. 2d 664, 670 (W.D. Pa. 2000)). Rather, if the Ordinance is silent on the issue, as the Town contends, *see* Town's brief at 9-10, then it expresses no view as to whether the use is permitted or prohibited.[11] In this circumstance, where there are two equally opposing inferences, nothing is actually proved, *see Commonwealth v. Borrin*, 12 A.3d 466, 475 (Pa. Super. 2011) (en banc), and the lingering doubt is one which must be resolved "in favor of the landowner and against any implied extension of restrictions on the use of one's property." *Adams Outdoor Advertising*, 909 A.2d at 484; *see Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947, 950-51 (Pa. Cmwlth. 2016) (concluding that where an ordinance did not prohibit a particular use, and the use was not encompassed by any other use defined by the

---

[10] *Pegasus Tower*, an unpublished opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code §69.414(a).

[11] The Town does not point to any language in the Ordinance stating, or having the effect of stating, that a use which is not permitted is one that is prohibited. *Cf. Bevans v. Township of Hilltown*, 457 A.2d 977, 980-81 (Pa. Cmwlth. 1983). Based upon our review, section 1341.21 of the Ordinance appears to refute any notion that a use that is neither prohibited nor permitted is one that is necessarily prohibited. Pursuant to this provision, the Ordinance seems to leave open the possibility that any use is presumptively permitted, at least as a special exception, by categorizing "[o]ther types of land uses, not specifically identified, regulated or recognized" and stating that "[a]ll undefined or other reasonable land uses that are not otherwise regulated . . . shall be considered a Special Exception use in its zoning district as determined by the . . . Board." Ordinance, §1341.21 (Undefined or Other Land Uses); *see In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 340 (Pa. Cmwlth. 2001) ("A special exception is a conditionally permitted use, allowed by the legislature if specifically listed standards are met.").

ordinance, the zoning hearing board erred in failing to broadly interpreted the term to allow for the proposed use). We apply the precept here.

To recapitulate, the Town has failed to demonstrate that Richland conducted Motor Vehicle Sales and Service on the property, a use that the Ordinance prohibits in the D-Development District. This is the sole theory the Town asserted in the enforcement notice and the proceedings below, and it is the theory that the Town is confined and restrained to for purposes of this appeal.[12] Consequently, we embrace this ground as the one for affirmance and deem it unnecessary to determine, in the alternative, whether the use of the property is a valid, nonconforming one. *See Gedeon v. State Farm Mutual Automobile Insurance Co.*, 188 A.2d 320, 321 (Pa. 1963) ("Because we agree with the court below on the third of these grounds, we need not determine the correctness of [its] rulings on the first two grounds.").[13]

---

[12] In its brief, the Town references sections 1341.09 and 1341.10 of the Ordinance, pertaining to vehicle storage and off-site parking lots, but it does not press the matter further. Specifically, the Town does not argue that sections 1341.09 and 1341.10 are applicable, much less that Richland violated them. The Town also does not assert that Richland needed a special exception to store vehicles on the property under section 1341.21.

In any event, these sections, and any theories of noncompliance that could accompany them, were not listed or contained in the enforcement notice; therefore, they cannot serve as a basis for concluding that Richland violated the Ordinance. *See* section 616.1(c)(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, *added by* the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §10616.1(c)(3) ("An enforcement notice shall state . . . [t]he specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance."); *see also City of Erie v. Freitus*, 681 A.2d 840, 842 (Pa. Cmwlth. 1996); *Township of Maidencreek v. Stutzman*, 642 A.2d 600, 601-02 (Pa. Cmwlth. 1994) (setting aside relief granted to a township where "the notice neither mention[ed] the specific ordinance section number, nor correctly describe[d] the applicable district.").

[13] This is particularly warranted considering that the Town has not proved that the use is currently in nonconformity with the Ordinance for, unless or until such a showing is made, the issue is more academic than it is real. *See* Ordinance, §1343.02(a) ("A nonconforming use is one that **(Footnote continued on next page…)**

11

Absent proof of noncompliance, there is no violation of the Ordinance, and without this, the enforcement notice cannot stand.

Accordingly, we affirm the trial court's order voiding the enforcement notice.

 

_____
PATRICIA A. McCULLOUGH, Judge

---

**(continued…)**

met all zoning requirements when the use was started but now fails to meet the current zoning requirements.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richland Properties, Inc.      :
      :
      v.      :
      :
Zoning Hearing Board of the Township  :
of McCandless, Pennsylvania     :
      :   No. 105 C.D. 2018
      v.      :
      :
Shults Ford Inc. and Township of    :
McCandless      :
      :
Appeal of:  Township of McCandless  :

## *ORDER*

AND NOW, this 6th day of November, 2018, the December 14, 2017 order of the Court of Common Pleas of Allegheny County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge